FILED

2009 MAY 13 PM 2:35

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2008 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR No. **CR09- 00466** |
| Plaintiff, | ) | I N D I C T M E N T |
| v. | ) | [18 U.S.C. § 1962(d): |
| JOSE ALFARO,<br>    aka "Shyboy,"<br>EDWIN ARIAS,<br>    aka "Enano,"<br>HUGO BOLANOS,<br>    aka "Crimen,"<br>JUAN CENDEJAS,<br>    aka "Morro,"<br>CARLOS CUENTAS,<br>    aka "Snoopy,"<br>YANIRA ESCALANTE,<br>    aka "Flaca,"<br>JUAN FUENTES,<br>    aka "Skinny,"<br>BRIAN GIRON,<br>    aka "Creeper,"<br>    aka "Grinch,"<br>JOSE GONZALEZ,<br>    aka "Puppet,"<br>PAUL CORTEZ JOVEL,<br>    aka "Little Man,"<br>    aka "Oscar Chacon,"<br>LUIS LAZO,<br>    aka "Chico,"<br>OSCAR LINARES,<br>    aka "Huevo,"<br>PEDRO LOPEZ,<br>    aka "Grumpy," | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Racketeer Influenced and<br>Corrupt Organizations<br>Conspiracy; 18 U.S.C.<br>§ 1959(a)(1), (a)(3), (a)(5):<br>Violent Crimes in Aid of<br>Racketeering; 18 U.S.C.<br>§§ 924(c)(1)(A)(iii), (j)(1):<br>Use, Carry, Brandish, and<br>Discharge a Firearm During a<br>Crime of Violence Causing<br>Death; 18 U.S.C. § 922(g)(1):<br>Felon in Possession of a<br>Firearm; 21 U.S.C. § 846:<br>Conspiracy to Distribute,<br>Possess with Intent to<br>Distribute, and to Aid and<br>Abet the Distribution of<br>Controlled Substances] |

EC: VOCS

```
JUAN MANCILLA,                      )
     aka "Gato,"                    )
JOSUE MARTINEZ,                     )
     aka "Negro,"                   )
KELVIN MELGAR,                      )
     aka "Pain,"                    )
FERNANDO MORALES,                   )
     aka "Clever,"                  )
EDWIN NAVAS,                        )
     aka "Pedernal,"                )
RUBEN PINEDA,                       )
     aka "Salty,"                   )
DAVID RIVERA,                       )
     aka "Huero,"                   )
ERIC SALAZAR,                       )
     aka "Tears,"                   )
ALEX SANCHEZ,                       )
     aka "Rebelde,"                 )
GUILLERMO VASQUEZ-LANDAVER,         )
     aka "Jute," and                )
MARVIN VASQUEZ,                     )
     aka "Catracho,"                )
                                    )
               Defendants.          )
                                    )
_____ )
```

The Grand Jury charges:

**INTRODUCTORY ALLEGATIONS**

A.   <u>THE RACKETEERING ENTERPRISE</u>

At all times relevant to this Indictment:

1.   Defendants JOSE ALFARO, also known as ("aka") "Shyboy" ("ALFARO"), EDWIN ARIAS, aka "Enano" ("ARIAS"), HUGO BOLANOS, aka "Crimen" ("BOLANOS"), JUAN CENDEJAS, aka "Morro" ("CENDEJAS"), CARLOS CUENTAS, aka "Snoopy" ("CUENTAS"), YANIRA ESCALANTE, aka "Flaca" ("ESCALANTE"), JUAN FUENTES, aka "Skinny" ("FUENTES"), BRIAN GIRON, aka "Creeper," aka "Grinch" ("GIRON"), JOSE GONZALEZ, aka "Puppet" ("GONZALEZ"), PAUL CORTEZ JOVEL, aka "Little Man," aka "Oscar Chacon" ("JOVEL"), LUIS LAZO, aka "Chico" ("LAZO"), OSCAR LINARES, aka "Huevo" ("LINARES"), PEDRO LOPEZ, aka "Grumpy" ("LOPEZ"), JUAN MANCILLA, aka "Gato" ("MANCILLA"), JOSUE MARTINEZ, aka "Negro" ("MARTINEZ"), KELVIN MELGAR, aka "Pain" ("MELGAR"), FERNANDO MORALES, aka "Clever" ("MORALES"), EDWIN NAVAS, aka "Pedernal" ("NAVAS"), RUBEN PINEDA, aka "Salty" ("PINEDA"), DAVID RIVERA, aka "Huero" ("RIVERA"), ERIC SALAZAR, aka "Tears" ("SALAZAR"), ALEX SANCHEZ, aka "Rebelde" ("SANCHEZ"), GUILLERMO VASQUEZ-LANDAVER, aka "Jute" ("VASQUEZ-LANDAVER"), and MARVIN VASQUEZ, aka "Catracho" ("VASQUEZ"), and others known and unknown to the Grand Jury, were members and associates of Mara Salvatrucha, otherwise known as MS-13 (hereinafter referred to as "MS-13"), a criminal organization whose members and associates engaged in numerous acts of violence and other crimes, including murder, conspiracy to commit murder, narcotics trafficking, extortion, robbery, assault, obstruction of justice, and witness tampering.

2.    MS-13, including its leadership, membership, and associates, constitutes an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which is engaged in, and the activities of which affect, interstate and foreign commerce.

3.    MS-13 operates in the Central District of California, and elsewhere within and outside of the United States, and constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

4.    Defendants ALFARO, ARIAS, BOLANOS, CENDEJAS, CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ, JOVEL, LAZO, LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES, NAVAS, PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to the Grand Jury, participated in the operation, organization, and leadership of MS-13.

B.    GENERAL BACKGROUND

At all times relevant to this Indictment:

5.    MS-13 was formed in Los Angeles, California, in the mid-1980s by immigrants fleeing the civil war in El Salvador. The term "Mara" originally referred to a vicious South American ant that attacks in swarms, but evolved over time into a general Spanish slang term for "gang." The term "Salvatrucha" combines two phrases. "Salva" refers both to the nation of El Salvador and to the gang's self-perceived role as the savior of the El Salvadoran people in Los Angeles. The term "trucha," meaning "look out," or "heads up," was adopted by MS-13 from other

4

Hispanic gangs in Los Angeles, whose members often shouted "trucha" as a way to alert each other to the presence of the police.  The number "13," which stands for the letter "M," the 13th letter of the alphabet, was added to the gang's name in the mid-1990s, when MS-13 became associated with the Mexican Mafia. The Mexican Mafia, commonly referred to as "la EME" (which translates in English as "the M"), is a criminal organization that operates within the prison system and exercises control over the Hispanic street gangs of Southern California.

6.    Over the years, as members of MS-13 were deported to El Salvador or traveled to other locations in the United States and abroad, MS-13 spread.  MS-13 operates as a national and international criminal organization, with tens of thousands of members regularly conducting gang activities in at least ten states and Washington, D.C., and with thousands more in Central America and Mexico.  MS-13 is considered one of the largest and most violent gangs in the world.

7.    MS-13 operates through subsets known as "cliques," which are usually named for a street within a clique's territory or for the neighborhood in which the clique operates.  Each clique has one or more leaders, commonly referred to as "shot callers," who are responsible for, among other things, managing the narcotics operation in the clique's territory, collecting extortion payments, directing the day-to-day management of the clique, enforcing MS-13's rules, and resolving intra-clique disputes.  Shot callers are also responsible for meeting with other clique leaders in order to achieve their common criminal purposes and to resolve disputes between cliques.

8.    In Los Angeles, many, though not all, MS-13 cliques operate within an area bounded by Sunset Boulevard to the north, Alvarado Street to the east, Olympic Boulevard to the south, and Gower Street to the west.  MS-13 also maintains cliques in other parts of Los Angeles County.

9.    A clique adds new members through an initiation ritual known as being "jumped in," during which several existing gang members beat up a prospective member for thirteen seconds.  Once "jumped in," a gang member is expected to participate fully in MS-13's criminal activity.

10.   MS-13 enforces its rules and promotes discipline among its members and associates by imposing monetary fines and by threatening and committing acts of violence against those members and associates of the organization who violate the rules of or pose a threat to the enterprise.  MS-13 members also engage in acts of violence against innocent citizens in the gang's territory and against rival gang members who venture into its territory.  Participation in violent acts directed by the gang leadership or in the presence of other gang members particularly increases the respect accorded that member and results in that member maintaining or increasing his position in MS-13.  In addition, violent acts committed by MS-13 members enhance the gang's overall reputation for violence in the community, resulting in the intimidation of citizens in MS-13 territory and the reinforcement of the gang's control of those areas of Los Angeles in which it operates.  MS-13 members are aided in their criminal endeavors by other trusted individuals, referred to herein as "associates," who participate in the

various activities of the cliques and its members.

11.   Members of MS-13 frequently, though not always, signified their membership in the gang with tattoos reading "Mara Salvatrucha," "MS," "MS-13," or other variations of the gang's name.   MS-13 members frequently refer to one another by gang monikers, or nicknames, and often do not know fellow gang members' legal names.

12.   Narcotics sales provide the bulk of MS-13's profits. In each clique's territory, the narcotics are supplied by a "mayorista," or wholesaler, and are usually, but not always, sold on the street by "traqueteros," sellers who are often not members of MS-13 but who are allowed to sell narcotics within the clique's territory on the condition that they buy the drugs they sell exclusively from the clique's mayorista and pay weekly "rent" to the clique.   Non-member associates of MS-13, often referred to as "workers," are sometimes used to distribute drugs to the traqueteros and collect rent from them.   Clique members provide protection to the traqueteros from robbers and competitors.   Traqueteros who violate this arrangement are subject to reprisals, including threatened and actual acts of violence.

13.   Profits are also generated from robberies, routine extortions of legitimate and illegitimate food vendors, and other business owners operating within MS-13 territory, as well as from additional miscellaneous crimes committed by MS-13 members.   Members are expected to contribute a portion of the proceeds of their crimes towards the gang.   In addition to generating profits, these crimes of intimidation also further

the enterprise by establishing and maintaining MS-13's control over its territory by instilling fear in the populace.

14.   In Los Angeles, each clique contributes a portion of its profits towards a tax paid by MS-13 to the Mexican Mafia. Like all gangs associated with the Mexican Mafia, MS-13 is required to pay a specified sum of money on a regular basis to a member of the Mexican Mafia.  Members of the Mexican Mafia are commonly referred to as "big homies," "tios" (Spanish for "uncles"), "carnals" (Spanish slang for "brothers"), and/or "señors" (a Spanish title of respect for a man).  In return for the tax payments, the Mexican Mafia provides protection to all MS-13 members incarcerated in county, state, and federal prisons and jails in California.  Failure to pay the tax will result in a "green light" being placed on MS-13, that is, a general order from the Mexican Mafia to assault or kill any incarcerated MS-13 member in any facility controlled by the Mexican Mafia.  Also in return for these tax payments, the Mexican Mafia ensures that no other gang operates in MS-13's territory or otherwise interferes with the criminal activities of MS-13.

15.   Since the mid-1990s, when MS-13 became associated with the Mexican Mafia, a single powerful MS-13 member in Los Angeles has been appointed to act as MS-13's representative to the Mexican Mafia ("the EME representative").  The EME representative works as a "soldier" for the Mexican Mafia and is responsible for, among other things, ensuring that MS-13 pays its tax; setting policies to manage and discipline MS-13 members and associates; organizing and conducting meetings among MS-13 shot callers on a regular basis; resolving disputes between MS-

13 cliques and members; organizing MS-13 cliques to generate money through, among other things, narcotics trafficking; and providing support to, and requesting assistance from, MS-13 leaders in El Salvador.

16.   In addition to the tax paid to the Mexican Mafia, MS-13 utilizes the profits obtained through its illegal activities by sending money to MS-13 members in prison in El Salvador, purchasing weapons and narcotics, paying attorney's fees for gang members who have been charged with committing crimes, contributing to funeral costs for gang members who have been killed, and putting money on the prison accounts of MS-13 members incarcerated in the United States.

C.   THE PARTIES

At all times relevant to this Indictment:

17.   Defendants ALFARO, ARIAS, CUENTAS, LOPEZ, and MELGAR were shot callers of the Hollywood clique of MS-13, and defendants GIRON, MORALES, and SALAZAR were members of the Hollywood clique of MS-13.

18.   Defendant BOLANOS was a shot caller of the Adams clique of MS-13.

19.   Defendant GONZALEZ was a shot caller of the Leeward clique of MS-13.

20.   Defendant JOVEL was a shot caller of the Parkview clique of MS-13.

21.   Defendants LAZO and LINARES were shot callers of the Western clique of MS-13.

22.   Defendant VASQUEZ-LANDAVER was a member of the Francis clique of MS-13.

23.  Defendant MANCILLA was a shot caller of the Southside clique of MS-13.

24.  Defendants CENDEJAS, FUENTES, PINEDA, and SANCHEZ were shot callers of the Normandie clique of MS-13.

25.  Defendant ESCALANTE was an associate of MS-13 who acted as a go-between for shot callers of MS-13 and between MS-13 members on the street and those in prison.

26.  Defendants MARTINEZ, NAVAS, RIVERA, and VASQUEZ were associates of MS-13.

D.   PURPOSES OF THE ENTERPRISE

27.  The purposes of the enterprise include, but are not limited to, the following:

     a.   Enriching the members and associates of the enterprise through, among other things, the sale and distribution of narcotics and the collection of rent from narcotics traffickers and legitimate and illegitimate business persons operating within its territory;

     b.   Preserving and protecting the power, territory, and profits of the enterprise, its members and associates, through threats of violence and actual acts of violence, including assault, robbery, and murder;

     c.   Promoting and enhancing the enterprise and the activities of its members and associates;

     d.   Providing assistance and protection to other members of the enterprise, including by intimidating and murdering potential witnesses against members of the enterprise.

E.   MEANS AND METHODS OF THE ENTERPRISE

28.  Among the means and methods by which the defendants

10

and other members and associates of the enterprise conduct and participate in the conduct of the affairs of the enterprise are the following:

      a.   Members and associates of the enterprise conspire to commit, commit, and attempt to commit acts of violence, including murder, to protect and expand the enterprise's criminal operations;

      b.   Members and associates of the enterprise acquire, possess, carry, and use deadly weapons, including firearms, in the course of the enterprise's criminal activities;

      c.   Members and associates of the enterprise promote a climate of fear in the community through threats of harm and violence;

      d.   Members and associates of the enterprise participate in narcotics trafficking, including the purchase and sale of crack cocaine, powder cocaine, crystal methamphetamine, and marijuana;

      e.   Members and associates of the enterprise use various techniques to avoid law enforcement scrutiny of the enterprise's criminal activities and to evade and frustrate law enforcement, such as the use of coded language to discuss criminal activities and other counter-surveillance techniques;

      f.   Members and associates of the enterprise frustrate investigations of their criminal conduct by, among other things, attempting to destroy evidence and intimidating witnesses through threats of violence and actual violence, including assault and murder.

COUNT ONE

[18 U.S.C. § 1962(d)]

29.   Paragraphs One through Twenty-Eight of the
Introductory Allegations of this Indictment are realleged and
incorporated by reference as though fully set forth herein.

<u>THE RACKETEERING CONSPIRACY</u>

30.   Beginning on a date unknown to the Grand Jury, but
certainly by in or about 1995, and continuing until in or about
May 2009, in Los Angeles County, within the Central District of
California, and elsewhere, defendants ALFARO, ARIAS, BOLANOS,
CENDEJAS, CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ, JOVEL,
LAZO, LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES,
NAVAS, PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and
VASQUEZ, and others known and unknown to the Grand Jury, being
persons employed by and associated with the enterprise described
above, namely, MS-13, which enterprise engaged in and the
activities of which affected interstate and foreign commerce,
unlawfully and knowingly combined, conspired, confederated, and
agreed together and with each other to violate Title 18, United
States Code, Section 1962, that is, to conduct and participate,
directly and indirectly, in the conduct of the affairs of the
enterprise through a pattern of racketeering activity, as that
term is defined in Title 18, United States Code, Sections
1961(1) and 1961(5), and as set forth below.   It was a further
part of the conspiracy that the above-named defendants agreed
that a conspirator would commit at least two acts of
racketeering in the conduct of the affairs of the enterprise.

A.   THE PATTERN OF RACKETEERING ACTIVITY

31.   The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

**Racketeering Act One:**

**Conspiracy to Possess with Intent to Distribute,**

**Distribute, and Aid and Abet the Distribution of Narcotics,**

**and to Commit Extortion**

32.   The defendants named below committed the following acts, any one of which constitutes the commission of Racketeering Act One:

a.   Beginning on a date unknown to the Grand Jury, but certainly by in or about 1995, and continuing until in or about May 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants ALFARO, ARIAS, BOLANOS, CENDEJAS, CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ, JOVEL, LAZO, LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES, NAVAS, PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

1.   To possess with intent to distribute, and distribute, and aid and abet the distribution of a controlled substance, namely, at least 50 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(iii), and 846.

2.   To possess with intent to distribute, and

13

distribute, and aid and abet the distribution of a controlled substance, namely, at least 1000 kilograms of a mixture or substance containing a detectable amount of marijuana, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(vii), and 846.

         3.   To possess with the intent to distribute, and distribute, and aid and abet the distribution of a controlled substance, namely, at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846.

         4.   To possess with intent to distribute, and distribute, and aid and abet the distribution of a controlled substance, namely, at least five kilograms of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(ii), and 846.

         b.   Beginning on a date unknown to the Grand Jury, but certainly by in or about 1995, and continuing until in or about May 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants ALFARO, ARIAS, BOLANOS, CENDEJAS, CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ, JOVEL, LAZO, LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES, NAVAS, PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to the Grand Jury, conspired and agreed with each other to commit extortion, in that defendants conspired to obtain money and other property from traqueteros operating in MS-13 territory by the wrongful

14

use of force and fear, in violation of California Penal Code
Sections 182, 518, 519, and 520.

**Racketeering Act Two:**

**Conspiracy to Commit Extortion**

33. Beginning on a date unknown to the Grand Jury, but
certainly by in or about 1995, and continuing until in or about
May 2009, in Los Angeles County, within the Central District of
California, and elsewhere, defendants ALFARO, ARIAS, BOLANOS,
CENDEJAS, CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ, JOVEL,
LAZO, LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES,
NAVAS, PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and
VASQUEZ, and others known and unknown to the Grand Jury,
knowingly conspired and agreed with each other to commit
extortion, in that defendants conspired to obtain money and
other property from persons other than those named in Paragraph
32(b), namely, all legitimate and semi-legitimate business
persons operating in MS-13 territory, by the wrongful use of
force and fear, in violation of California Penal Code Sections
182, 518, 519, and 520.

**Racketeering Act Three:**

**Robbery of G.B.**

34. On or about January 7, 2001, in Los Angeles County,
within the Central District of California, defendant LAZO, and
others known and unknown to the Grand Jury, feloniously took
personal property in the possession of another from his person
and immediate presence, and against his will, by means of force
and fear, namely, LAZO and others known and unknown to the Grand
Jury struck victim G.B. and ripped a gold necklace from G.B.'s

neck in the vicinity of Occidental Boulevard and Hoover Street in Los Angeles, California, in violation of California Penal Code Section 211.

**Racketeering Act Four:**

**Conspiracy to Murder and Murder of Jose Ayala, aka "Loco"**

35. The defendant named below committed the following acts involving murder, either one of which constitutes the commission of Racketeering Act Four:

a. <u>Conspiracy to Murder Jose Ayala, aka "Loco"</u>

In or about March 2001, in Los Angeles County, within the Central District of California, defendant LAZO, and others known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to kill with malice aforethought Jose Ayala, aka "Loco," and a conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 182 and 187.

b. <u>Murder of Jose Ayala, aka "Loco"</u>

On or about March 17, 2001, in Los Angeles County, within the Central District of California, defendant LAZO, and others known and unknown to the Grand Jury, unlawfully, willfully, deliberately, and knowingly killed with premeditation and malice aforethought, and aided, abetted, advised, encouraged, and otherwise willfully participated in the killing with malice aforethought of Jose Ayala, aka "Loco," in violation of California Penal Code Sections 31, 187, and 189.

**Racketeering Act Five:**

**Witness Intimidation of G.A.**

36.   On or about April 4, 2001, in Los Angeles County, within the Central District of California, defendant RIVERA, and others known and unknown to the Grand Jury, knowingly intimidated and threatened to use physical force against victim G.A., by pointing a handgun at G.A.'s forehead and threatening to kill G.A., with the intent to influence, delay, and prevent G.A.'s testimony in the prosecution of the murder of Reny Lara, aka "Triste," in violation of Title 18, United States Code, Section 1512(a)(2).

**Racketeering Act Six:**

**Conspiracy to Murder G.G. and A.G.**

37.   From in or about May 2001, through in or about October 2002, in Los Angeles County, within the Central District of California, defendants MANCILLA and ARIAS, and others known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to kill with malice aforethought victims G.G. and A.G., and a conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 182 and 187.

**Racketeering Act Seven:**

**Conspiracy to Murder and Murder of Aileen Alvarez, aka "Nena"**

38.   The defendant named below committed the following acts involving murder, either one of which constitutes the commission of Racketeering Act Seven:

17

a.   <u>Conspiracy to Murder Aileen Alvarez, aka "Nena"</u>

From in or about January 2002 through in or about August 2002, in Los Angeles County, within the Central District of California, defendant ARIAS, and others known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to kill with malice aforethought Aileen Alvarez, aka "Nena," and a conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 182 and 187.

b.   <u>Murder of Aileen Alvarez, aka "Nena"</u>

On or about August 19, 2002, in Los Angeles County, within the Central District of California, defendant ARIAS, and others known and unknown to the Grand Jury, unlawfully, willfully, deliberately, and knowingly killed with premeditation and malice aforethought, and aided, abetted, advised, encouraged, and otherwise willfully participated in the killing with malice aforethought of Aileen Alvarez, aka "Nena," in violation of California Penal Code Sections 31, 187, and 189.

**Racketeering Act Eight:**

**Conspiracy to Murder Erick Flores, aka "Moreno" and Ileana Lara, aka "Mousey," and Murder of Erick Flores, aka "Moreno"**

39.   The defendants named below committed the following acts involving murder, either one of which constitutes the commission of Racketeering Act Eight:

18

   a.   <u>Conspiracy to Murder Erick Flores, aka "Moreno,"</u>
        <u>and Ileana Lara, aka "Mousey"</u>

From in or about the fall of 2002 through on or about
January 22, 2003, in Los Angeles County, within the Central
District of California, defendants MARTINEZ, VASQUEZ-LANDAVER,
and VASQUEZ, and others known and unknown to the Grand Jury,
unlawfully and knowingly combined, conspired, confederated, and
agreed together and with each other to kill with malice
aforethought Erick Flores, aka "Moreno," and Ileana Lara, aka
"Mousey," and a conspirator committed an overt act in
furtherance of the conspiracy, in violation of California Penal
Code Sections 182 and 187.

   b.   <u>Murder of Erick Flores, aka "Moreno"</u>

On or about January 22, 2003, in Los Angeles County, within
the Central District of California, defendants MARTINEZ,
VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to
the Grand Jury, unlawfully, willfully, deliberately, and
knowingly killed with premeditation and malice aforethought, and
aided, abetted, advised, encouraged, and otherwise willfully
participated in the killing with malice aforethought of Erick
Flores, aka "Moreno," in violation of California Penal Code
Sections 31, 187, and 189.

**Racketeering Act Nine:**

**Murder of Ileana Lara, aka "Mousey"**

40.   On or about January 22, 2003, in Los Angeles County,
within the Central District of California, defendants MARTINEZ,
VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to
the Grand Jury, unlawfully, willfully, deliberately, and

19

knowingly killed with premeditation and malice aforethought, and aided, abetted, advised, encouraged, and otherwise willfully participated in the killing with malice aforethought of Ileana Lara, aka "Mousey," in violation of California Penal Code Sections 31, 187, and 189.

**Racketeering Act Ten:**

**Attempted Robbery of Vanessa Jewelry Store**

41. On or about March 10, 2003, in Los Angeles County, within the Central District of California, defendant VASQUEZ-LANDAVER, and others known and unknown to the Grand Jury, obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, and attempted and conspired so to do, in that VASQUEZ-LANDAVER and others known and unknown unlawfully attempted to take and obtain at gunpoint personal property consisting of jewelry from victim J.R., against J.R.'s will by means of actual and threatened force, violence, and fear of injury, immediate and future, to J.R.'s person and property, at the Vanessa Jewelry Store, located on West 3rd Street in Los Angeles, California, in violation of California Penal Code Section 211.

**Racketeering Act Eleven:**

**Robbery of A.H.**

42. On or about May 16, 2003, in Los Angeles County, within the Central District of California, defendant CUENTAS, and others known and unknown to the Grand Jury, feloniously took personal property in the possession of another from his person and immediate presence, and against his will, by means of force and fear, namely, CUENTAS and others known and unknown robbed

victim A.H. of cash and his cellphone at gunpoint in the vicinity of Western Avenue and Santa Monica Boulevard, in Los Angeles, California, in violation of California Penal Code Section 211.

**Racketeering Act Twelve:**

**Conspiracy to Murder and Murder of Tomas Caballero**

43.    The defendants named below committed the following acts involving murder, either one of which constitutes the commission of Racketeering Act Twelve:

a.    Conspiracy to Murder Tomas Caballero

In or about September 2003, in Los Angeles County, within the Central District of California, defendants BOLANOS and NAVAS, and others known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to kill with malice aforethought Tomas Caballero, and a conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 182 and 187.

b.    Murder of Tomas Caballero

On or about September 1, 2003, in Los Angeles County, within the Central District of California, defendants BOLANOS and NAVAS, and others known and unknown to the Grand Jury, unlawfully, willfully, deliberately, and knowingly killed with premeditation and malice aforethought, and aided, abetted, advised, encouraged, and otherwise willfully participated in the killing with malice aforethought of Tomas Caballero, in violation of California Penal Code Sections 31, 187, and 189.

21

**Racketeering Act Thirteen:**

**Robbery of C.B.**

44.   On or about January 16, 2005, in Los Angeles County, within the Central District of California, defendant SALAZAR, and others known and unknown to the Grand Jury, feloniously took personal property in the possession of another from his person and immediate presence, and against his will, by means of force and fear, namely, defendant SALAZAR and others known and unknown robbed victim C.B. of cash and a necklace at knifepoint in the vicinity of St. Andrews Place and Santa Monica Boulevard, in Los Angeles, California, in violation of California Penal Code Section 211.

**Racketeering Act Fourteen:**

**Murder of Lionel Guajardo**

45.   On or about March 13, 2006, in Los Angeles County, within the Central District of California, defendant LOPEZ, and others known and unknown to the Grand Jury, unlawfully, willfully, deliberately, and knowingly killed with premeditation and malice aforethought, and aided, abetted, advised, encouraged, and otherwise willfully participated in the killing with malice aforethought of Lionel Guajardo, in violation of California Penal Code Sections 31, 187, and 189.

**Racketeering Act Fifteen:**

**Conspiracy to Murder Walter Lacinos, aka "Cameron"**

46.   From in or about January 2006 through in or about May 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendants CENDEJAS, FUENTES, PINEDA, and SANCHEZ, and others known and unknown to the Grand Jury,

22

unlawfully and knowingly combined, conspired, confederated, and
agreed together and with each other to kill with malice
aforethought, Walter Lacinos, aka "Cameron," and a conspirator
committed an overt act in furtherance of the conspiracy, in
violation of California Penal Code Sections 182 and 187.

**Racketeering Act Sixteen:**

**Robbery of M.R.**

47.  On or about September 26, 2006, in Los Angeles County,
within the Central District of California, defendant FUENTES,
and others known and unknown to the Grand Jury, feloniously took
personal property in the possession of another from his person
and immediate presence, and against his will, by means of force
and fear, namely, FUENTES and others known and unknown robbed
M.R. of approximately $6,000 at gunpoint in a parking lot in the
vicinity of Olympic Boulevard and South Hope Street, in Los
Angeles, California, in violation of California Penal Code
Section 211.

**Racketeering Act Seventeen:**

**Conspiracy to Murder and Murder of Jorge Bernal, aka
"Travieso"**

48.  The defendants named below committed the following
acts involving murder, either one of which constitutes the
commission of Racketeering Act Seventeen:

a.  <u>Conspiracy to Murder Jorge Bernal, aka "Travieso"</u>

In or about October 2006, in Los Angeles County, within the
Central District of California, defendants GIRON and JOVEL, and
others known and unknown to the Grand Jury, unlawfully and
knowingly combined, conspired, confederated, and agreed together

23

and with each other to kill with malice aforethought Jorge
Bernal, aka "Travieso," and a conspirator committed an overt act
in furtherance of the conspiracy, in violation of California
Penal Code Sections 182 and 187.

        b.   Murder of Jorge Bernal, aka "Travieso"

On or about October 28, 2006, in Los Angeles County, within
the Central District of California, defendants GIRON and JOVEL,
and others known and unknown to the Grand Jury, unlawfully,
willfully, deliberately, and knowingly killed with premeditation
and malice aforethought, and aided, abetted, advised,
encouraged, and otherwise willfully participated in the killing
with malice aforethought of Jorge Bernal, aka "Travieso," in
violation of California Penal Code Sections 31, 187, and 189.

**Racketeering Act Eighteen:**

**Conspiracy to Murder Detective Frank Flores**

49.  From on or about December 21, 2006, through in or
about January 2007, in Los Angeles County, within the Central
District of California, defendants CUENTAS, LOPEZ, MELGAR,
MORALES, and SALAZAR, and others known and unknown to the Grand
Jury, unlawfully and knowingly combined, conspired,
confederated, and agreed together and with each other to kill
with malice aforethought Los Angeles Police Department Detective
Frank Flores, and a conspirator committed an overt act in
furtherance of the conspiracy, in violation of California Penal
Code Sections 182 and 187.

B.   OVERT ACTS

50.  In furtherance of the conspiracy, and to accomplish
the objects of the conspiracy, defendants ALFARO, ARIAS,

BOLANOS, CENDEJAS, CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ, JOVEL, LAZO, LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES, NAVAS, PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to the Grand Jury, committed various overt acts, on or about the following times and dates, within the Central District of California, and elsewhere, including, but not limited to, the following:

(1)   On or about August 8, 1995, defendant MELGAR and approximately five other members of MS-13 assaulted and attempted to rob a man in the vicinity of 5136 Marathon Street in Los Angeles.

(2)   On or about January 7, 1995, defendant CENDEJAS sold crack cocaine to an undercover police officer in the vicinity of 11th Street and Mariposa Avenue in Los Angeles.

(3)   On or about October 28, 1995, defendant PINEDA attempted to dispose of a loaded 9 mm handgun while being chased by police in the vicinity of 8th Street and Mariposa Avenue in Los Angeles.

(4)   On or about March 14, 1996, defendant CENDEJAS possessed three loaded handguns in an apartment located at 861 S. Fedora Street in Los Angeles.

(5)   On or about November 11, 1997, defendant RIVERA sold crack cocaine in the vicinity of 531 S. Rampart Boulevard in Los Angeles.

(6)   On or about April 20, 1998, defendant PINEDA sold $2,400 worth of crack cocaine to an LAPD confidential informant in the vicinity of Geneva Street and Westmoreland Avenue in Los Angeles.

(7)  On or about June 18, 1998, defendant RIVERA attempted to dispose of a film canister containing approximately 40 rocks of crack cocaine when stopped by police officers in the vicinity of 345 S. Rampart Boulevard in Los Angeles.

(8)  On or about November 17, 1998, defendant CUENTAS resisted arrest and threatened police officers in the vicinity of 5522 W. Sierra Vista Avenue in Los Angeles.

(9)  On or about March 2, 1999, defendant RIVERA trespassed for the purpose of selling narcotics at 434 S. Rampart Boulevard in Los Angeles.

(10) On or about May 3, 1999, defendant RIVERA sold crack cocaine in the vicinity of 400 S. Rampart Boulevard in Los Angeles.

(11) On or about August 23, 2000, defendant LAZO and two other MS-13 members possessed 15 rocks of crack cocaine in their car.

(12) On or about December 27, 2000, defendant LAZO spray painted MS-13 graffiti on a store in the vicinity of 8th Street and Normandie Avenue in Los Angeles.

(13) On or about January 7, 2001, defendant LAZO and other MS-13 members assaulted G.B. and ripped a gold chain from G.B.'s throat in the vicinity of Occidental Boulevard and Hoover Street in Los Angeles.

(14) On or about January 24, 2001, defendant ALFARO possessed cocaine in the vicinity of 1006 Mariposa Avenue while in the company of approximately seven other MS-13 members.

(15) On or about April 9, 2001, defendant RIVERA threatened at gunpoint to kill G.A. if she testified about her

knowledge of the murder of Reny Lara, aka "Triste."

(16) On or about March 17, 2001, defendant LAZO, and other members of MS-13, shot and killed Jose Ayala, aka "Loco," in a van on Santa Inez Street in Los Angeles.

(17) On or about March 17, 2001, defendant LAZO and other MS-13 members burned the van in which Jose Ayala, aka "Loco," was killed in an attempt to destroy evidence of his murder.

(18) On or about May 26, 2001, defendants ALFARO and CUENTAS trespassed at 1006 N. Mariposa Avenue in Los Angeles in the company of approximately 40 other members of MS-13.

(19) On or about June 21, 2001, defendant LAZO resisted arrest, struck a police officer, and attempted to flee on foot in the vicinity of Lexington and Van Ness Avenues in Los Angeles.

(20) On or about August 16, 2001, defendant BOLANOS escaped from Quezaltepeque prison in San Salvador, El Salvador.

(21) On or about November 30, 2001, defendant FUENTES picked up another MS-13 member who had been observed by police selling crack cocaine in the vicinity of 6th Street and Normandie Avenue in Los Angeles.

(22) On or about November 30, 2001, defendant FUENTES possessed crack cocaine in his vehicle in the vicinity of 6th Street and Normandie Avenue in Los Angeles.

(23) On or about December 22, 2001, defendant CUENTAS assaulted a citizen in the vicinity of Santa Monica Boulevard and Western Avenue in Los Angeles.

(24) On or about January 10, 2002, defendant CUENTAS and

other MS-13 members loitered, intimidated customers, and prevented customers from entering a Subway sandwich shop located at 1075 N. Western Avenue in Los Angeles.

(25) In or about March 2002, defendants ARIAS and MANCILLA, and other members of MS-13, met at the El Cafetal restaurant on Santa Monica Boulevard in Los Angeles to conspire to kill G.A. and A.G. because they believed G.A. and A.G. had cooperated with the police in a homicide investigation against MS-13 member Will Rivas, aka "Little Satanas."

(26) On or about March 7, 2002, defendant LINARES loitered with other MS-13 members for the purpose of selling crack cocaine and marijuana at 511 S. Rampart Boulevard in Los Angeles.

(27) On or about March 16, 2002, defendant FUENTES and another MS-13 member beat a citizen for refusing to join MS-13.

(28) On or about March 27, 2002, defendant FUENTES and another MS-13 member threatened two citizens at gunpoint at 3318 W. 8th Street in Los Angeles.

(29) On or about April 4, 2002, defendant FUENTES possessed in his vehicle a loaded stolen 9 mm handgun.

(30) On or about May 11, 2002, defendants ALFARO and CUENTAS, and other MS-13 members, congregated at the intersection of Santa Monica Boulevard and Western Avenue in Los Angeles in violation of a gang injunction against MS-13.

(31) On or about July 4, 2002, defendant ALFARO and two other MS-13 members associated with one another and blocked the free passage of pedestrians at a shopping center located at 1075 N. Western Avenue in Los Angeles, in violation of a gang

28

1    injunction against MS-13.

2         (32) On or about July 20, 2002, defendant CUENTAS and

3    other MS-13 members wrote MS-13 graffiti on a telephone booth

4    and utility box near the intersection of Santa Monica Boulevard

5    and Western Avenue in Los Angeles.

6         (33) On or about August 2, 2002, defendant FUENTES

7    offered to sell crack cocaine to an undercover police officer in

8    the vicinity of 8th Street and Normandie Avenue in Los Angeles.

9         (34) On or about August 19, 2002, defendant ARIAS and

10   other members of MS-13 shot and killed Aileen Alvarez, aka

11   "Nena," and dumped her body on Wilshire Boulevard in Los

12   Angeles.

13        (35) On or about September 23, 2002, defendant ALFARO

14   negotiated the terms of a crack cocaine sale during a recorded

15   phone conversation with a confidential informant working on

16   behalf of the Federal Bureau of Investigation ("FBI").

17        (36) On or about September 26, 2002, defendant ALFARO

18   sold approximately 27 grams of cocaine to an FBI confidential

19   informant in the vicinity of Wilton Place and Santa Monica

20   Boulevard in Los Angeles.

21        (37) On or about October 1, 2002, defendant ALFARO

22   negotiated the terms of a crack cocaine sale during a recorded

23   phone conversation with an FBI confidential informant.

24        (38) On or about October 2, 2002, defendant ALFARO sold

25   approximately 14.4 grams of cocaine to an FBI confidential

26   informant in the vicinity of Wilton Place and Santa Monica

27   Boulevard in Los Angeles.

28        (39) On or about October 7, 2002, defendant ALFARO sold

                                  29

approximately 7.1 grams of cocaine base in the form of crack cocaine to an FBI confidential informant in the vicinity of Wilton Place and Santa Monica Boulevard in Los Angeles.

(40) On or about October 11, 2002, defendant ALFARO sold approximately 12.3 grams of cocaine and approximately 3.7 grams of cocaine base in the form of crack cocaine to an FBI confidential informant in the vicinity of a Burger King restaurant located at the corner of Western Avenue and Santa Monica Boulevard in Los Angeles.

(41) On or about October 24, 2002, defendant ALFARO sold approximately 15.1 grams of cocaine and approximately 8.7 grams of cocaine base in the form of crack cocaine to an FBI confidential informant in the vicinity of a Burger King restaurant located at the corner of Western Avenue and Santa Monica Boulevard in Los Angeles.

(42) On or about October 28, 2002, defendant CENDEJAS discharged a stolen .40 caliber handgun in the vicinity of 501 S. Rampart Boulevard in Los Angeles.

(43) On or about December 10, 2002, defendant CUENTAS possessed a .38 caliber handgun and a .380 caliber handgun in his residence located on Sierra Vista Avenue in Los Angeles.

(44) In or about December 2002, defendants MARTINEZ, VASQUEZ-LANDAVER, and VASQUEZ, and other MS-13 members, conspired to kill Erick Flores, aka "Moreno," and Ileana Lara, aka "Mousey," for violating MS-13 rules regarding the operation of the gang's narcotics business.

(45) On or about January 22, 2003, defendants MARTINEZ, VASQUEZ-LANDAVER, and VASQUEZ, and another MS-13 member, shot

and killed Erick Flores, aka "Moreno," and Ileana Lara, aka "Mousey," inside a parked car near the intersection of 54th Street and McKinley Avenue in Los Angeles.

(46) On or about February 13, 2003, defendant VASQUEZ-LANDAVER and another MS-13 member possessed a .45 caliber handgun in a vehicle in the vicinity of 6th Street and Rampart Boulevard in Los Angeles.

(47) On or about March 10, 2003, defendant VASQUEZ-LANDAVER and two other MS-13 members attempted to rob at gunpoint employees of a jewelry store located at 3715 W. 3rd Street in Los Angeles.

(48) On or about May 18, 2003, defendant CUENTAS and two other MS-13 members robbed A.H. at gunpoint and stole his cash and cellphone in the vicinity of St. Andrews Place and Santa Monica Boulevard in Los Angeles.

(49) On or about May 20, 2003, defendant ALFARO sold approximately 12.8 grams of cocaine to an FBI confidential informant in the vicinity of 1021 S. Park View Street in Los Angeles.

(50) On or about July 3, 2003, defendant ESCALANTE facilitated a three-way call to a shot caller of MS-13.

(51) On or about July 18, 2003, defendant CUENTAS possessed a .357 caliber revolver, bullets, pepper spray, handcuffs, and a videotape titled "L.A. Mara Salvatrucha" in his residence located on Sierra Vista Avenue in Los Angeles.

(52) On or about August 15, 2003, defendant BOLANOS offered to sell crack cocaine and marijuana to an undercover police officer in the vicinity of 501 S. Rampart Boulevard in

Los Angeles.

(53) On or about August 31, 2003, defendants BOLANOS and NAVAS, and another MS-13 member, conspired to kill Tomas Caballero.

(54) On or about August 31, 2003, defendants BOLANOS and NAVAS, and another MS-13 member, attempted to kill Tomas Caballero by giving him an overdose of drugs.

(55) On or about September 1, 2003, defendants BOLANOS and NAVAS, and another MS-13 member, shot and killed Tomas Caballero inside BOLANOS's car, and they dumped his body in the vicinity of the Bridewell Street off-ramp of the 110 freeway in Los Angeles.

(56) On or about October 27, 2003, defendant NAVAS possessed in his car approximately five kilograms of cocaine that he was attempting to transport to the East Coast from California.

(57) On or about November 5, 2003, defendant SALAZAR threatened a plainclothes police officer and possessed on his person a knife, a screwdriver that had been sharpened into a shank, a toy gun, and marijuana in the vicinity of Wilton Place and Virginia Avenue in Los Angeles.

(58) On or about November 10, 2003, defendant SALAZAR and another MS-13 member robbed merchandise from the Santa Monica Market located on Santa Monica Boulevard in Los Angeles.

(59) On or about November 24 and 25, 2003, defendant BOLANOS discussed a narcotics transaction and MS-13 business in a series of phone calls with another member of MS-13.

(60) On or about November 25, 2003, defendant ESCALANTE

32

warned a member of MS-13 not to come to her residence because the police were there.

(61) On or about December 3, 2003, defendant ESCALANTE had a phone conversation with a shotcaller of MS-13 during which she told the shotcaller that she had lied to Los Angeles Police Department detectives about her relationship with him and another member of MS-13.

(62) On or about December 11, 2003, defendant SALAZAR and another MS-13 member sold crack cocaine in the vicinity of 822 S. Carondelet Street in Los Angeles.

(63) On or about December 12, 2003, a member of the Mexican Mafia sent a letter from Tehachapi State Prison to defendant ESCALANTE in Los Angeles to be delivered to a shotcaller of MS-13.

(64) On or about December 20, 2003, defendant MELGAR possessed in his vehicle approximately 40 rocks of crack cocaine in the vicinity of 441 S. Rampart Boulevard in Los Angeles.

(65) On or about March 20, 2004, defendant MANCILLA participated in a meeting of approximately twenty MS-13 members in Orcas Park in Los Angeles.

(66) On or about March 30, 2004, defendant MANCILLA sold approximately 54.5 grams of methamphetamine to an FBI confidential informant in the parking lot of a grocery store on Long Beach Boulevard in Lynwood, California.

(67) On or about April 12, 2004, defendant GONZALEZ and two other MS-13 members beat a man and stole his ring in the parking lot of a nightclub on Hollywood Boulevard in Los Angeles.

(68) On or about April 21, 2004, defendant GONZALEZ sold approximately 51 grams of methamphetamine to an FBI confidential informant in the vicinity of 112 S. Occidental Boulevard in Los Angeles.

(69) On or about April 26, 2004, defendant ARIAS shot at the occupants of a vehicle in the vicinity of Grape Street and Firestone Boulevard in Los Angeles.

(70) On or about May 3, 2004, defendant MANCILLA sold approximately 113.3 grams of methamphetamine to an FBI confidential informant at a liquor store near the intersection of El Segundo Boulevard and Santa Fe Avenue in Lynwood, California.

(71) On or about May 5, 2004, defendant GONZALEZ sold approximately 100.8 grams of methamphetamine to an FBI confidential informant in the vicinity of 78th Street and Figueroa Avenue in Los Angeles.

(72) On or about May 11, 2004, defendant BOLANOS possessed in his vehicle a large brick of marijuana in the vicinity of 1100 Ardmore Street in Los Angeles.

(73) On or about May 11, 2004, defendant BOLANOS possessed methamphetamine, a gram scale, $652 in cash, and a gun magazine in his residence on Ardmore Street in Los Angeles.

(74) On or about June 3, 2004, defendant GONZALEZ sold approximately 134.3 grams of methamphetamine to an FBI confidential informant in the vicinity of 76th Street and Broadway Avenue in Los Angeles.

(75) On or about June 16, 2004, defendant ALFARO sold approximately 42.4 grams of cocaine base in the form of crack

34

cocaine to an FBI confidential informant in an apartment located at 4649 Beverly Boulevard in Los Angeles.

(76) On or about June 17, 2004, defendant GONZALEZ sold approximately 52.1 grams of methamphetamine to an FBI confidential informant in the vicinity of 76th Street and Broadway Avenue in Los Angeles.

(77) On or about June 21, 2004, defendant ALFARO sold approximately 19.4 grams of cocaine base in the form of crack cocaine to an FBI confidential informant in an apartment located on Beverly Boulevard in Los Angeles.

(78) On or about June 24, 2004, defendant ALFARO sold approximately 43.8 grams of cocaine base in the form of crack cocaine to an FBI confidential informant in an apartment located on Beverly Boulevard in Los Angeles.

(79) On or about August 1, 2004, defendant GIRON possessed on his person a double-edged razor blade for carving grafitti, while associating with other MS-13 members in the vicinity of Pico Boulevard and Hauser Street in Los Angeles.

(80) On or about August 28, 2004, defendant CENDEJAS acted as a lookout for other MS-13 members who were selling crack cocaine in the vicinity of 8th Street and Wilton Place in Los Angeles.

(81) On or about October 11, 2004, defendant MANCILLA sold approximately 194.8 grams of methamphetamine to an FBI confidential informant in the parking lot of a store located on Playa Street in Culver City, California.

(82) On or about January 3, 2005, defendant MANCILLA and two other MS-13 members attempted to hide three loaded handguns

35

from the police by hiding them in and around MANCILLA's residence and vehicle.

(83) On or about January 16, 2005, defendant SALAZAR and another MS-13 member robbed C.B. of cash and a necklace at knifepoint in the vicinity of St. Andrews Place and Santa Monica Boulevard in Los Angeles.

(84) On or about February 18, 2005, defendant FUENTES and another MS-13 member associated with each other in the vicinity of 8th Street and Vermont Avenue in violation of a gang injunction against MS-13.

(85) On or about May 24, 2005, defendant MORALES possessed a knife in the vicinity of Virginia Street and Wilton Place in Los Angeles.

(86) On or about May 24, 2005, defendant MORALES painted MS-13 graffiti on Melrose Avenue in Los Angeles.

(87) On or about September 7, 2005, defendant ALFARO possessed crack cocaine, methamphetamine, heroin, and narcotics paraphernalia, including a false bottom can, a digital scale, and rolls of cash, in his residence on Beverly Boulevard in Los Angeles.

(88) On or about September 7, 2005, defendant MANCILLA possessed phone numbers of other MS-13 members, letters from other MS-13 members, and an article about the arrest of fourteen MS-13 members in El Salvador in his residence on Nava Street in Norwalk, California.

(89) On or about January 25, 2006, defendant FUENTES agreed by telephone to sell approximately one ounce of methamphetamine to an FBI confidential informant.

(90) On or about January 26, 2006, defendant FUENTES delivered approximately 14.3 grams of methamphetamine to an FBI confidential informant.

(91) On or about January 27, 2006, defendant LOPEZ asked an FBI confidential informant to drive him to collect an extortion payment in Culver City on behalf of defendant MELGAR.

(92) On or about January 31, 2006, defendant LOPEZ spoke by telephone with an FBI confidential informant and agreed to sell three handguns to the informant.

(93) On or about February 4, 2006, defendant LOPEZ sold approximately one-fourth of an ounce of methamphetamine out of the driveway of a residence on Sierra Vista Avenue in Los Angeles.

(94) On or about February 7, 2006, defendant LOPEZ met with an FBI confidential informant and discussed selling guns and methamphetamine to the informant.

(95) On or about February 26, 2006, defendants CUENTAS and LOPEZ discussed putting money on the inmate account of an incarcerated MS-13 member.

(96) On or about March 1, 2006, defendant FUENTES agreed by telephone to sell approximately two ounces of methamphetamine to an FBI confidential informant.

(97) On or about March 1, 2006, defendant LOPEZ and other MS-13 members assaulted victims S.S. and W.P. in the vicinity of N. Mariposa Avenue in Los Angeles.

(98) On or about March 2, 2006, defendant FUENTES directed another MS-13 member to deliver approximately 12.9 grams of methamphetamine to an FBI confidential informant at a

residence on Sierra Vista Avenue in Los Angeles.

(99) On or about March 13, 2006, defendant LOPEZ and other MS-13 members shot and killed Lionel Guajardo in the vicinity of Kingsley Avenue in Los Angeles.

(100) On or about March 23, 2006, defendant CUENTAS told an FBI informant that members of the Hollywood clique of MS-13 were planning a meeting to discuss clique leadership in the wake of defendant LOPEZ's arrest.

(101) On or about March 28, 2006, defendant MORALES sold a .380 caliber handgun to an FBI confidential informant for $400 at a residence on Sierra Vista Avenue in Los Angeles.

(102) On or about April 4, 2006, defendant CUENTAS sold a MAK-90 assault rifle to an FBI confidential informant at a residence on Sierra Vista Avenue in Los Angeles.

(103) On or about April 12, 2006, defendants CENDEJAS and FUENTES sold approximately eighteen grams of cocaine base in the form of crack cocaine to an FBI confidential informant in the vicinity of a liquor store located at the corner of 8th Street and Catalina Street in Los Angeles.

(104) On or about April 18, 2006, defendant FUENTES agreed by phone to sell approximately one ounce of methamphetamine to an FBI confidential informant.

(105) On or about April 18, 2006, defendant FUENTES delivered approximately 7.9 grams of methamphetamine to an FBI confidential informant in the vicinity of Catalina Street and James M. Woods Boulevard in Los Angeles.

(106) On or about April 25, 2006, defendant FUENTES agreed by phone to sell approximately two ounces of

methamphetamine to an FBI confidential informant.

(107) On or about April 25, 2006, defendant FUENTES delivered approximately 15.5 grams of methamphetamine to an FBI confidential informant in the parking lot of a Burger King restaurant located at the corner of Vermont Avenue and Washington Boulevard in Los Angeles.

(108) On or about May 6 and 7, 2006, defendants CENDEJAS, FUENTES, PINEDA, and SANCHEZ had a series of phone conversations with each other and with other members of MS-13, during which they conspired to kill Walter Lacinos, aka "Cameron."

(109) On or about May 15, 2006, an MS-13 member shot and killed Walter Lacinos, aka "Cameron," in La Libertad, El Salvador.

(110) On or about May 16, 2006, defendant MELGAR collected $1,150 from an FBI confidential informant near the corner of Melrose Avenue and Vermont Avenue in Los Angeles.

(111) On or about May 17, 2006, defendant MELGAR and another MS-13 member delivered approximately 20 grams of methamphetamine to an FBI confidential informant near the corner of Western Avenue and Fernwood Avenue in Los Angeles.

(112) On or about May 18, 2006, defendant PINEDA conducted countersurveillance in the vicinity of Mariposa Avenue and Olympic Boulevard in Los Angeles in an attempt to identify police officers who were surveilling a narcotics transaction being conducted by another MS-13 member.

(113) On or about May 23, 2006, defendant CUENTAS put money obtained from the sale of narcotics on the inmate account

39

of defendant LOPEZ.

(114) On or about May 25, 2006, defendant FUENTES delivered approximately four grams of methamphetamine to an FBI confidential informant in the parking lot of a grocery store located at the corner of Vermont and Vernon Avenues in Los Angeles.

(115) On or about May 26, 2006, defendant CENDEJAS had a series of phone conversations during which he arranged for another MS-13 member to deliver approximately 39.5 grams of cocaine base in the form of crack cocaine to an FBI informant in the vicinity of James M. Woods Boulevard and Kenmore Avenue in Los Angeles.

(116) On or about June 8, 2006, defendant MELGAR and another MS-13 member collected $1,725 for narcotics from an FBI confidential informant at a residence located on Sierra Vista Avenue in Los Angeles.

(117) On or about June 8, 2006, defendant MELGAR and another MS-13 member delivered approximately 42.1 grams of methamphetamine to an FBI confidential informant at the corner of Melrose and Vermont Avenues in Los Angeles.

(118) On or about June 11, 2006, defendant MORALES collected extortion payments from food vendors in the vicinity of Western Avenue and Santa Monica Boulevard in Los Angeles while armed with a 9 mm handgun.

(119) On or about July 9, 2006, defendants CUENTAS, MORALES, and SALAZAR, and other MS-13 members, met at the residence of an FBI confidential informant and discussed the crisis facing MS-13 members in Central America and the need to

40

generate money for the gang.

(120) On or about July 10, 2006, defendant JOVEL sold a .380 caliber handgun to an FBI confidential informant for $330 in the vicinity of Harvard and Irolo Streets in Los Angeles.

(121) On or about July 31, 2006, defendant MELGAR received money from defendant CUENTAS to send to another MS-13 member in prison in El Salvador.

(122) On or about August 1, 2006, defendant JOVEL and another MS-13 member provided an FBI confidential informant with $4,000 in cash to purchase approximately 114.4 grams of methamphetamine and instructed the informant to sell the methamphetamine on the street and return the profits to JOVEL.

(123) On or about August 2, 2006, defendant GIRON offered to sell an FBI confidential informant an assault rifle for $150.

(124) On or about August 8, 2006, defendant GIRON sold a .22 caliber assault rifle to an FBI confidential informant for $150 at a residence on Sierra Vista Avenue in Los Angeles.

(125) On or about August 13, 2006, defendant GIRON and other MS-13 members brought four firearms, including a MAK-11 assault rifle, to a residence on Sierra Vista Avenue in Los Angeles.

(126) On or about August 20, 2006, defendant ESCALANTE went to a residence on Sierra Vista Avenue in Los Angeles to collect a drug debt from defendant CUENTAS that was owed to defendant MELGAR for an ounce of methamphetamine.

(127) On or about August 29, 2006, defendant MELGAR collected $2,400 from an FBI confidential informant at a

41

residence on Sierra Vista Avenue in Los Angeles.

(128) On or about August 29, 2006, defendants MELGAR and MORALES delivered approximately 61.5 grams of methamphetamine to an FBI confidential informant at a residence located on Sierra Vista Avenue in Los Angeles.

(129) On or about September 14, 2006, defendant FUENTES delivered approximately 2.9 grams of methamphetamine to an FBI confidential informant in the parking lot of a Burger King restaurant located at the intersection of Vermont Avenue and Washington Boulevard in Los Angeles.

(130) On or about September 26, 2006, defendant FUENTES and another MS-13 member robbed M.R. at gunpoint of approximately $6,000 in a parking lot M.R. managed on W. Olympic Boulevard in Los Angles.

(131) On or about October 5, 2006, defendants GIRON and CUENTAS tried to convince an FBI confidential informant to intimidate witnesses who planned to testify against members of the Hollywood clique of MS-13.

(132) On or about October 20, 2006, defendant FUENTES possessed $12,000 in cash, photos of MS-13 members, and letters from MS-13 members at his residence on W. 49th Street in Los Angeles.

(133) On or about October 28, 2006, defendants GIRON, and JOVEL, and other MS-13 members, shot and killed Jorge Bernal, aka "Travieso," a member of the Toonerville gang, in the vicinity of Chevy Chase Park in Glendale, California.

(134) On or about November 11, 2006, defendant MELGAR told an FBI confidential informant that he was going to drive to

Santa Ana, California, to pick up methamphetamine for defendant SALAZAR to sell.

(135) On or about November 17, 2006, defendant MORALES hid a gun that had been used by other MS-13 members to kill Alvaro Rivas in the vicinity of 1026 Ridgewood Place in Los Angeles.

(136) On or about November 30, 2006, defendant MORALES sold a .38 caliber handgun to an FBI confidential informant for $350.

(137) On or about December 12, 2006, defendants MELGAR and MORALES sold approximately 56.5 grams of methamphetamine to an FBI confidential informant at a residence located at 5511 Sierra Vista Avenue in Los Angeles.

(138) On or about December 21, 2006, defendants LOPEZ and MELGAR had a phone conversation with each other and with other MS-13 members during which LOPEZ, MELGAR, and others discussed a plot to kill LAPD Detective Frank Flores.

(139) On or about December 23, 2006, defendants LOPEZ and MELGAR had a phone conversation during which they discussed a plot to kill LAPD Detective Frank Flores.

(140) In or about late December 2006, defendants CUENTAS and MELGAR ordered another MS-13 member to follow through with defendant LOPEZ's orders to kill LAPD Detective Frank Flores.

(141) In or about late December 2006, defendants MORALES and SALAZAR showed another MS-13 member a handgun that the MS-13 member was ordered to use to kill LAPD Detective Frank Flores.

(142) On or about January 11, 2007, defendant SALAZAR possessed four bags of methamphetamine and a bag of marijuana in

his car in the vicinity of Vine Street and De Longpre Avenue in Los Angeles.

(143) On or about January 20, 2007, defendant MELGAR agreed to sell an FBI confidential informant approximately four ounces of methamphetamine on January 24, 2007, in exchange for $2,200.

(144) On or about January 24, 2007, defendant MELGAR told an FBI confidential informant that the methamphetamine he had agreed to sell the informant would arrive in 15-20 minutes and that the delivery would include an extra package for defendant MORALES.

(145) On or about January 24, 2007, a co-conspirator working for defendant MELGAR delivered approximately 50.5 grams of methamphetamine to an FBI confidential informant at a residence located on Sierra Vista Avenue in Los Angeles.

(146) On or about February 2, 2007, defendant ESCALANTE went to a residence located on Sierra Vista Avenue in Los Angeles to collect a drug debt on behalf of defendant MELGAR.

(147) On or about February 15, 2007, defendant JOVEL sold approximately 55.3 grams of methamphetamine to an FBI confidential informant in the vicinity of 5511 Sierra Vista Avenue in Los Angeles.

(148) On or about March 20, 2007, defendant JOVEL sold approximately 111.9 grams of methamphetamine to an FBI confidential informant in the parking lot of a McDonald's restaurant located at the corner of Vermont and Melrose Avenues in Los Angeles.

(149) On or about April 4, 2007, defendant CUENTAS sold

approximately 13.7 grams of cocaine to an FBI confidential informant.

(150) On or about May 8, 2007, defendants MORALES and GIRON associated with each other in the vicinity of Romaine Street and Western Avenue in Los Angeles, in violation of a gang injunction against MS-13.

(151) On or about May 17, 2007, defendant JOVEL sold approximately 83.6 grams of methamphetamine to an FBI confidential informant in the vicinity of Vermont and McKinley Avenues in Los Angeles.

(152) On or about May 24, 2007, defendant JOVEL sold approximately 53.6 grams of methamphetamine and approximately 27.5 grams of cocaine base in the form of crack cocaine to an FBI confidential informant in the vicinity of 1208 East 46th Street in Los Angeles.

(153) On or about June 8, 2007, defendant JOVEL sold approximately 83.9 grams of cocaine base in the form of crack cocaine to an FBI confidential informant in the vicinity of Clinton Street and Normandie Avenue in Los Angeles.

(154) On or about June 20, 2007, defendants MORALES and SALAZAR associated with each other in the vicinity of Western Avenue and Santa Monica Boulevard in Los Angeles, in violation of a gang injunction against MS-13.

(155) On or about June 20, 2007, defendant JOVEL and another MS-13 member sold approximately 55.1 grams of methamphetamine to an FBI confidential informant in the vicinity of 2748 Council Street in Los Angeles.

(156) In or about July 2007, defendants MORALES and

SALAZAR, and another member of MS-13, threatened a fruit vendor at gunpoint if the vendor did not pay rent in the vicinity of St. Andrews Place and Santa Monica Boulevard in Los Angeles.

(157) On or about July 10, 2007, defendant CUENTAS sold approximately 45 grams of cocaine base in the form of crack cocaine to an FBI confidential informant on Sierra Vista Avenue in Los Angeles.

(158) On or about November 15, 2007, defendant JOVEL threw methamphetamine and crack cocaine out of a window in an attempt to dispose of evidence during the execution of a search warrant at his residence on Alpine Street in Los Angeles.

All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO

[18 U.S.C. § 1959(a)(1)]

51.   At all times relevant to this Indictment, MS-13, as
more fully described in Paragraphs One through Twenty-Eight of
Count One of this Indictment, which are realleged and
incorporated by reference as though set forth fully herein,
constituted an enterprise as defined in Title 18, United States
Code, Section 1959(b)(2), that is, a group of individuals
associated in fact which was engaged in, and the activities of
which affected, interstate and foreign commerce.  The enterprise
constituted an ongoing organization whose members functioned as
a continuing unit for a common purpose of achieving the
objectives of the enterprise.

52.   At all times relevant to this Indictment, the above-
described enterprise, through its members and associates,
engaged in racketeering activity as defined in Title 18, United
States Code, Sections 1959(b)(1) and 1961(1), namely, acts
involving murder, extortion, and robbery in violation of state
law; narcotics trafficking in violation of Title 21, United
States Code, Sections 841 and 846, and acts indictable under
Section 1512 (witness intimidation) in violation of Title 18,
United States Code.

53.   On or about March 17, 2001, in Los Angeles County,
within the Central District of California, for the purpose of
maintaining and increasing their position in MS-13, an
enterprise engaged in racketeering activity, defendant LAZO, and
others known and unknown to the Grand Jury, unlawfully and with
malice aforethought, aided, abetted, advised, encouraged, and

47

otherwise participated in the killing with malice aforethought of Jose Ayala, aka "Loco," in violation of California Penal Code Sections 31 and 187, all in violation of Title 18, United States Code, Section 1959(a)(1).

COUNT THREE

[18 U.S.C. § 1959(a)(1)]

54.   Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

55.   On or about August 19, 2002, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendant ARIAS, and others known and unknown to the Grand Jury, unlawfully and with malice aforethought, aided, abetted, advised, encouraged, and otherwise participated in the killing with malice aforethought of Aileen Alvarez, aka "Nena," in violation of California Penal Code Sections 31 and 187, all in violation of Title 18, United States Code, Section 1959(a)(1).

49

## COUNT FOUR

### [18 U.S.C. § 1959(a)(1)]

56. Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

57. On or about January 22, 2003, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendants MARTINEZ, VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to the Grand Jury, unlawfully and with malice aforethought, aided, abetted, advised, encouraged, and otherwise participated in the killing with malice aforethought of Erick Flores, aka "Moreno," in violation of California Penal Code Sections 31 and 187, all in violation of Title 18, United States Code, Section 1959(a)(1).

COUNT FIVE

[18 U.S.C. § 1959(a)(1)]

58.   Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

59.   On or about January 22, 2003, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendants MARTINEZ, VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to the Grand Jury, unlawfully and with malice aforethought, aided, abetted, advised, encouraged, and otherwise participated in the killing with malice aforethought of Ileana Lara, aka "Mousey," in violation of California Penal Code Sections 31 and 187, all in violation of Title 18, United States Code, Section 1959(a)(1).

COUNT SIX

[18 U.S.C. §§ 1959(a)(3)]

60.   Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

61.   On or about January 16, 2005, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendant SALAZAR, and others known and unknown to the Grand Jury, committed an assault upon the person of another with a deadly weapon or instrument other than a firearm and by any means of force likely to produce great bodily injury, namely, SALAZAR and others known and unknown to the Grand Jury robbed victim C.B. of cash and a necklace at knifepoint in the vicinity of St. Andrews Place and Santa Monica Boulevard in Los Angeles, California, in violation of California Penal Code Section 245(a)(1), in violation of Title 18, United States Code, Sections 1959(a)(3).

COUNT SEVEN

[18 U.S.C. § 1959(a)(1)]

62.   Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

63.   On or about March 13, 2006, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendant LOPEZ, and others known and unknown to the Grand Jury, unlawfully and with malice aforethought, aided, abetted, advised, encouraged, and otherwise participated in the killing with malice aforethought of Lionel Guajardo, in violation of California Penal Code Sections 31 and 187, all in violation of Title 18, United States Code, Section 1959(a)(1).

COUNT EIGHT

[18 U.S.C. §§ 924(c)(1)(A)(iii), (j)(1)]

64.   On or about March 13, 2006, in Los Angeles County, within the Central District of California, defendant PEDRO LOPEZ, aka "Grumpy" ("LOPEZ"), and others known and unknown to the Grand Jury, knowingly used and discharged a firearm, namely, a .380 caliber Lorcin pistol, Model L380, bearing serial number 389008, during and in relation to, and in furtherance of, a crime of violence, namely, the violent crime in aid of racketeering (the murder of Lionel Guajardo), in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Seven of this Indictment.

In the commission of this offense, and through the use and discharge of the firearm, defendant LOPEZ, and others known and unknown to the Grand Jury, caused the death of Lionel Guajardo, and his death constituted a murder, as defined in Title 18, United States Code, Section 1111(a), namely, a willful, deliberate, and premeditated killing with malice aforethought.

COUNT NINE

[18 U.S.C. § 1959(a)(5)]

65.  Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

66.  From in or about January 2006, through in or about May 2006, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendants CENDEJAS, FUENTES, PINEDA, and SANCHEZ, and others known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to kill with malice aforethought Walter Lacinos, aka "Cameron," and a conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT TEN

[18 U.S.C. §§ 1959(a)(3)]

67.   Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

68.   On or about September 26, 2006, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendant FUENTES, and others known and unknown to the Grand Jury, committed an assault upon the person of another with a deadly weapon or instrument other than a firearm and by any means of force likely to produce great bodily injury, namely, FUENTES and others known and unknown robbed M.R. of approximately $6,000 at gunpoint in a parking lot in the vicinity of Olympic Boulevard and South Hope Street in Los Angeles, California, in violation of California Penal Code Section 245(a)(1), in violation of Title 18, United States Code, Sections 1959(a)(3).

COUNT ELEVEN

[18 U.S.C. § 1959(a)(5)]

69. Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

70. In or about October 2006, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendants GIRON and JOVEL, and others known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to kill with malice aforethought Jorge Bernal, aka "Travieso," and a conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT TWELVE

[18 U.S.C. § 1959(a)(1)]

71.   Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

72.   On or about October 28, 2006, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendants GIRON and JOVEL, and others known and unknown to the Grand Jury, unlawfully and with malice aforethought, aided, abetted, advised, encouraged, and otherwise participated in the killing with malice aforethought of Jorge Bernal, aka "Travieso," in violation of California Penal Code Sections 31 and 187, all in violation of Title 18, United States Code, Section 1959(a)(1).

COUNT THIRTEEN

[18 U.S.C. §§ 924(c)(1)(A)(iii), (j)(1)]

73.  On or about October 28, 2006, in Los Angeles County, within the Central District of California, defendants BRIAN GIRON, aka "Creeper," aka "Grinch" ("GIRON") and PAUL CORTEZ JOVEL, aka "Little Man," aka "Oscar Chacon" ("JOVEL"), and others known and unknown to the Grand Jury, knowingly used and discharged a firearm, namely, a .45 caliber Colt pistol, bearing serial number 261317C, during and in relation to, and in furtherance of, a crime of violence, namely, the violent crime in aid of racketeering (the murder of Jorge Bernal), in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Twelve of this Indictment.

In the commission of this offense, and through the use and discharge of the firearm, defendants GIRON and JOVEL, and others known and unknown to the Grand Jury, caused the death of Jorge Bernal, and his death constituted a murder, as defined in Title 18, United States Code, Section 1111(a), namely, a willful, deliberate, and premeditated killing with malice aforethought.

COUNT FOURTEEN

[18 U.S.C. § 922(g)(1)]

74.   On or about October 28, 2006, in Los Angeles County, within the Central District of California, defendant PAUL CORTEZ JOVEL, aka "Little Man," aka "Oscar Chacon" ("JOVEL"), knowingly possessed a firearm, namely, a .45 caliber Colt pistol, bearing serial number 261317C, in and affecting interstate and foreign commerce.

Such possession occurred after defendant JOVEL had been convicted of a crime punishable by imprisonment for a term exceeding one year, namely, Transportation and Sale of a Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Los Angeles Superior Court, Case Number XCNBA06340701, on or about August 20, 1992.

COUNT FIFTEEN

[18 U.S.C. § 1959(a)(5)]

75.    Paragraphs 51 and 52 of Count Two are hereby realleged and incorporated by reference as though fully set forth herein.

76.    From on or about December 21, 2006, through in or about January 2007, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing their position in MS-13, an enterprise engaged in racketeering activity, defendants CUENTAS, MELGAR, MORALES, and SALAZAR, and others known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to kill with malice aforethought Los Angeles Police Department Detective Frank Flores, and a conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT SIXTEEN

[21 U.S.C. § 846]

77.   Paragraphs One through Twenty-Eight of the Introductory Allegations are hereby realleged and incorporated by reference as though fully set forth herein.

A.   OBJECTS OF THE CONSPIRACY

78.   Beginning on a date unknown to the Grand Jury, but certainly by in or about 1995, and continuing until in or about May 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants ALFARO, ARIAS, BOLANOS, CENDEJAS, CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ, JOVEL, LAZO, LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES, NAVAS, PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

a.   To possess with intent to distribute, and distribute, and aid and abet the distribution of a controlled substance, namely, at least 50 grams of a mixture and substance containing a detectable amount of cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(iii), and 846.

b.   To possess with intent to distribute, and distribute, and aid and abet the distribution of a controlled substance, namely, at least 1000 kilograms of a mixture and substance containing a detectable amount of marijuana, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(vii), and 846.

c.   To possess with intent to distribute, and distribute, and aid and abet the distribution of a controlled substance, namely, at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846.

d.   To possess with intent to distribute, and distribute, and aid and abet the distribution of a controlled substance, namely, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(ii), and 846.

B.   MEANS OF THE CONSPIRACY

79.   The objects of the conspiracy were to be accomplished in substance as follows:

a.   Defendants ALFARO, BOLANOS, CENDEJAS, CUENTAS, FUENTES, GONZALEZ, JOVEL, LOPEZ, MANCILLA, MELGAR, PINEDA, SANCHEZ, and VASQUEZ, and others known and unknown to the Grand Jury, would install drug wholesalers, or mayoristas, and street dealers, or traqueteros, to sell narcotics in MS-13's territory.

b.   Defendants ALFARO, ARIAS, BOLANOS, CENDEJAS, CUENTAS, FUENTES, GIRON, GONZALEZ, JOVEL, LAZO, LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES, PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ, and others known and unknown to the Grand Jury, would inform the traqueteros that they were required to pay rent to MS-13 and to buy their supply of narcotics from MS-13's preferred mayorista in order to conduct their narcotics trafficking activities free of

1  interference from MS-13.

2          c.    Defendants ALFARO, ARIAS, BOLANOS, CENDEJAS,

3  CUENTAS, FUENTES, GIRON, GONZALEZ, JOVEL, LAZO, LOPEZ, LINARES,

4  MANCILLA, MARTINEZ, MELGAR, MORALES, PINEDA, RIVERA, SALAZAR,

5  SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ, and others known and

6  unknown to the Grand Jury, would require the traqueteros to pay

7  rent to MS-13 in order to receive protection from MS-13 and the

8  Mexican Mafia, and would be threatened with retribution by MS-13

9  if they failed to do so.

10         d.    At regular intervals, defendants ALFARO, ARIAS,

11 BOLANOS, CENDEJAS, CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ,

12 JOVEL, LAZO, LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR,

13 MORALES, PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and

14 VASQUEZ, and others known and unknown to the Grand Jury, would

15 collect rent from the traqueteros, and would cause a portion of

16 the rent collected from the narcotics traffickers to be

17 distributed to the shot callers and other members of MS-13, as

18 well as to members and associates of the Mexican Mafia.

19         e.    Through the collection of rent, defendants

20 ALFARO, ARIAS, BOLANOS, CENDEJAS, CUENTAS, ESCALANTE, FUENTES,

21 GIRON, GONZALEZ, JOVEL, LAZO, LOPEZ, LINARES, MANCILLA,

22 MARTINEZ, MELGAR, MORALES, NAVAS, PINEDA, RIVERA, SALAZAR,

23 SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ, controlled significant

24 amounts of narcotics trafficking and encouraged the narcotics

25 trafficking activities of individuals operating in MS-13

26 territory and who paid rent to MS-13.

27         f.    Defendants ALFARO, ARIAS, BOLANOS, CENDEJAS,

28 CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ, JOVEL, LAZO,

LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES, NAVAS,
PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ,
and others known and unknown to the Grand Jury, would possess
with intent to distribute and distribute narcotic controlled
substances, including cocaine, cocaine base, methamphetamine,
and marijuana.

       g.    Defendants ALFARO, ARIAS, BOLANOS, CENDEJAS,
CUENTAS, ESCALANTE, FUENTES, GIRON, GONZALEZ, JOVEL, LAZO,
LOPEZ, LINARES, MANCILLA, MARTINEZ, MELGAR, MORALES, NAVAS,
PINEDA, RIVERA, SALAZAR, SANCHEZ, VASQUEZ-LANDAVER, and VASQUEZ,
and others known and unknown to the Grand Jury, would arrange
for others to distribute narcotic controlled substances,
including cocaine, cocaine base, methamphetamine, and marijuana.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

C.    OVERT ACTS

80.    Paragraph 50 of Count One of this Indictment is hereby realleged as if fully set forth herein.

A TRUE BILL

/S/
_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Violent & Organized Crime Section

ELIZABETH R. YANG
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section

ELIZABETH CARPENTER
Assistant United States Attorney
Violent & Organized Crime Section