1  Kerry R. Bensinger, State Bar No. 132178
   BENSINGER, RITT, TAI & THVEDT
2  A Limited Liability Partnership
   65 North Raymond Avenue, Suite 320
3  Pasadena, California 91103
   Tel:  (626) 685-2550
4  Fax:  (626) 685-2562

5  Attorney for Defendant ALEXANDER SANCHEZ

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  UNITED STATES OF AMERICA, | **Case No. CR-09 00466-R-22** |
| 12             Plaintiff, | **DEFENDANTS' NOTICE OF** |
| 13 | **MOTION AND MOTION TO** |
| | **SUPPRESS EVIDENCE DERIVED** |
| 14        v. | **FROM WIRETAPS NOT** |
| | **ESTABLISHED TO HAVE BEEN** |
| 15  JOSE ALFARO, et al., | **PROPERLY PRE-APPROVED BY** |
| | **AN APPROPRIATE JUSTICE** |
| 16             Defendants. | **DEPARTMENT OFFICIAL** |
| 17 | Hearing Date:  August 30, 2010 |
| 18 | Time:  1:30 p.m. |
| | Courtroom:  Judge Manuel L. Real |

19

20

21  **TO UNITED STATES ATTORNEY ANDRE BIROTTE AND ASSISTANT**

22  **UNITED STATES ATTORNEYS ELIZABETH CARPENTER, ABIGAIL W.**

23  **EVANS, AND XOCHITL ARTEGA, ALL PARTIES AND THEIR**

24  **ATTORNEYS OF RECORD:**

25       **PLEASE TAKE NOTICE** that on August 30, at 1:30 p.m., or as soon

26  thereafter as counsel may be heard, in the courtroom of the Honorable Manuel L.

27  Real, defendant Alex Sanchez, by and through his counsel of record Kerry R.

28  Bensinger, joined in by defendants Jose Alfaro, Hugo Bolanos, Juan Cendejas, Carlos

1 | Cuentas, Yanira Escalante, Juan Fuentes, Jose Gonzalez, Paul Cortez Jovel, Pedro
2 | Lopez, Juan Mancilla, Josue Martinez, Kelvin Melgar, Fernando Morales, David
3 | Rivera and Guillermo Vasquez-Landaver, will and hereby do move to suppress any
4 | and all evidence seized or gathered, directly or indirectly, as a result of unlawful
5 | electronic eavesdropping and surveillance.

6 |      This motion is made on the grounds that the wiretap orders 00-304, 00-304(A),
7 | 00-304(B) and 03-194, are invalid on their face in that the orders were issued without
8 | regard to whether or not a specific individual with appropriate authority granted
9 | approval for the applicant to request permission to seek authorization for a wiretap.
10 | Furthermore, the wiretap orders 00-119, 00-119(A), 00-119(B), 03-336, and 03-354
11 | are facially invalid in that they fail to specify the individual, if any, who gave
12 | approval for the order in violation of the Fourth Amendment and 18 U.S.C. § 2518.
13 | Third, evidence obtained under the putative authority of all of the wiretap orders 00-
14 | 119 (May 25, 2000), 00-119(A) (June 30, 2000), 00-119(B) (Aug. 4, 2000), 00-304
15 | (Nov. 20, 2000), 00-304(A) (Jan. 2, 2001), 00-304(B) (Feb. 1, 2001), 03-194 (June
16 | 12, 2003), 00-336 (Nov. 5, 2003), 00-354 (Nov. 21, 2003), 06-104 (Apr. 26, 2006),
17 | 06-118 (May 17, 2006), 06-194 (July 19, 2006), 06-285 (Nov. 29, 2006), 06-285(A)
18 | (Dec. 29, 2006), 06-285(B) (Jan. 26, 2007), 08wt001-JLK (Jan. 8, Feb. 7, Mar. 7,
19 | Apr. 4, 2008), and 08wt0012-JLK (Mar. 12, May 10, 2008) was unlawfully
20 | intercepted because the individual who purported to approve the applications was not
21 | vested with general statutory authority to approve a wiretap and had not been
22 | specially designated with such authority by the Attorney General in accordance with
23 | 18 U.S.C. § 2516.
24 | / / /
25 | / / /
26 | / / /
27 | / / /
28 | / / /

2

1       This motion is based upon the attached Memorandum of Points and

2  Authorities, exhibits, all files and records in this case, and any further evidence as

3  may be adduced at the hearing on this motion.

4

5  DATED: July 30, 2010                    Respectfully Submitted,

6                                          BENSINGER, RITT, TAI & THVEDT
7                                          A Limited Liability Law Partnership

8                                              S/ KERRY R. BENSINGER

9                                          KERRY R. BENSINGER
10                                         Attorney for Defendant
                                           ALEXANDER SANCHEZ
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# TABLE OF CONTENTS

**Page No.**

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . 1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   The Absence of any Finding that Wiretap Orders 00-304, 00-304(A), 00-304(B), and 03-194 were Approved by Any Politically Responsible Justice Department Official Renders them Invalid on their Face . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   The Absence of any Finding that Wiretap Orders 00-119, 00-119(A), 00-119(B), 03-336, and 03-354 were Approved by a Specific Politically Responsible Justice Department Official Renders them Invalid on their Face . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.   To the Extent Authorized by a Justice Department Official, All the Wiretap Orders in this Case are Invalid Because They Were Not Approved by an Official Who Had Been "Specially Designated" By the Attorney General . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.   Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.   The Wiretap Orders that Were Not Approved by an Lower-Level Official Who Had been Specially Designated Violated Title III and Are Invalid . . . . . . . . . . . . . 10

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

1

**TABLE OF AUTHORITIES**

2

3                                                                                      <u>Page No.</u>

4  **<u>Cases</u>**

5  <u>Berger v. New York</u>, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967)  . . . . . . . 4

6  <u>Katz v. United States</u>, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) . . . . . . 3, 4

7  <u>United States v. Chavez</u>, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974) . . 6, 8

8  <u>United States v. Florea</u>, 541 U.S. 568 (6th Cir. 1976) . . . . . . . . . . . . . . . . . . . . 13, 14

9  <u>United States v. Giordano</u>, 416 U.S. 505, 94 S.Ct. 1820,

10      40 L.Ed.2d 341 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7, 10, 11, 13-16

11  <u>United States v. Gonzalez, Inc.</u>, 412 F.3d 1102 (9th Cir. 2005) . . . . . . . . . . . . . . . 15

12  <u>United States v. Reyna</u>, 218 F.3d 1108 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 7

13  <u>United States v. Staffeldt</u>, 451 F.3d 578 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 8

14  <u>United States v. Swann</u>, 526 F.2d 147 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . 8

15  <u>United States v. United States Dist. Court</u>, 407 U.S. 297,

16      92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 15

17

18  **<u>Statutes</u>**

19  18 U.S.C. § 2516 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 10, 12, 13

20  18 U.S.C. § 2518 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 7, 8, 16

21  18 U.S.C. §§ 2510-2520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22  28 U.S.C. § 504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23  PUB. L. NO. 109-177, § 506(a)(6), 120 Stat. 248 (2006) . . . . . . . . . . . . . . . . . . . 12

24  PUB. L. NO. 90-351, TIT. III, 82 STAT. 197 (June 19, 1968) . . . . . . . . . . . . . . . . 4, 5

25  PUB. L. NO. 98-473, § 1203(c)(4), 98 Stat. 2152 (Oct. 12, 1984) . . . . . . . . . . . . . 11

26  PUB. L. NO. 99-508, §104, 100 Stat. 1855 (Oct. 21, 1986) . . . . . . . . . . . . . . . . . . 12

27

28

ii

1 | **Other**

2 | S. REP. NO. 90-1097(1968), *reprinted in* 1968 U.S.C.C.A.N. 2189 . . . . . . . . 5, 6, 10

3 | S. REP. NO. 98-225 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182 . . . . . . . 11, 12, 14

4 | S. REP. NO. 99-541 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555 . . . . . . . . . 4, 9, 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

### I.

4

### INTRODUCTION

5       Whether through inadvertence or disregard of the strict statutory requirements,

6   the individuals who applied for several of the wiretaps failed to seek approval from

7   any appropriate authorizing official at the United States Department of Justice.

8   Several of the applications make no reference to seeking such advance approval.

9   Several of the orders make no reference to such approval by the Department of

10   Justice.  The orders are facially invalid for failing to "fix responsibility" in a specific

11   Justice Department official as having approved these wiretaps.

12       The invalid wiretap orders fall into two categories.  In one set, four of the

13   orders – 00-304, 00-304(A), 00-304(B), and 03-194, issued between November 20,

14   2000 and June 12, 2003 – the orders lack any indication that the applicant obtained

15   approval from any justice department official.  In the second set of orders – 00-119,

16   00-119(A), 00-119(B), 03-336, 03-354, issued between May 25, 2000 and August 4,

17   2000, and on November 5 and 20, 2003 – the orders make oblique reference to the

18   possibility of justice department approval but make no specific finding and fail to

19   identify and "fix responsibility" in any justice department official for having

20   approved the wiretaps.

21       To the extent the applications were approved by individuals working at the

22   Justice Department, the approval came not from a senior official who was generally

23   empowered to grant or deny approval, but instead from a lower level employee who

24   assumed such authority under a general delegation rather than a special designation as

25   required by Congress.

26

27

28

1

1

## II.

2

## STATEMENT OF FACTS

3      The easiest facts to describe are the series of wiretaps sought between

4    November 2000 and February 2001 and the wiretap obtained on June 12, 2003.  One

5    scrutinizes these orders in vain for any hint that the wiretap application had been

6    submitted to, let alone approved by, any official in the Justice Department, let alone

7    one with authority to approve a wiretap application.

8      The orders in May, June, and August of 2000, and in November 2003, present a

9    slightly different, but equally problematic situation.  The orders make no specific

10    finding that the application was approved by any specific official.  The orders

11    obliquely suggest that the wiretaps may have been approved, but fail to identify by

12    whom.  Each of these five orders contain, in authorizing the interception, the

13    following passing reference to the possibility of approval:

14         [I]t is hereby ordered that [specific law enforcement
           officials and others], pursuant to an application authorized
15         by an appropriate official of the Criminal Division, United
           States Department of Justice, pursuant to the power
16         delegated to that official by special designation of the
           Attorney General under the authority vested in her by
17         Section 2516 of Title 18, United States Code, may [or "may
           continued [sic] to"] intercept and record wire
18         communications of the Target Subjects and others as yet
           unknown concerning the above-described offenses to and
19         from [the] Target Telephone.

20    Ex. 1, at 50 (00-119, 5/25/00, at 3-4), Bates 537-38.[1]

21      These orders nowhere identify "the person authorizing the application" by

22    name or even by job title or position.

23

24

25

26

27      [1] *See also* Ex. 2, at 115 (00-119(A), 6/30/00, at 4), Bates 440; Ex. 3, at 181
       (00-119(B), 8/4/00, at 4), Bates 421; Ex. 8, at 645-646 (03-336, 11/5/03, at 4-5),
28    Bates 6708-09; Ex. 9 at 730 (03-354, 11/20/00, at 4), Bates 14,976.

2

## III.

## ARGUMENT

"Though physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, its broader spirit now shields private speech from unreasonable surveillance." United States v. United States Dist. Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). The Fourth Amendment regulates "not only the seizure of tangible items, but extends as well to the recording of oral statements." Id., *quoting* Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Court has reasoned that "the broad and unsuspected governmental incursions into conversational privacy which electronic surveillance entails necessitate the application of Fourth Amendment safeguards." United States v. United States Dist. Court, 407 U.S. at 313 (footnote omitted).

Congress made quite clear the essential findings that must be contained in *each* wiretap order:

> Each order authorizing or approving the interception of any wire, oral, or electronic communication under this chapter shall specify–
> . . . (d) the identity of the agency authorized to intercept the communications, and of *the person* authorizing the application.

18 U.S.C. § 2518(4)(d) (emphasis added).

Facial defects in wiretap orders are grounds for suppressing evidence obtained from, or derived from, a wiretap:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that (i) the communication was unlawfully intercepted [or] (ii) the order of authorization or approval under which it was intercepted is insufficient on its face.

18 U.S.C. § 2518(10)(a).

/ / /

/ / /

/ / /

3

1    Apart from the general provisions of the Fourth Amendment, "Title III is the
2  primary law protecting the security and privacy of business and personal
3  communications in the United States today." S. REP. NO. 99-541, at 2 (1986),
4  *reprinted in* 1986 U.S.C.C.A.N. 3555, 3556.

5

6  **A.    The Absence of any Finding that Wiretap Orders 00-304, 00-304(A),**
7  **00-304(B), and 03-194 were Approved by Any Politically Responsible**
8  **Justice Department Official Renders them Invalid on their Face**

9    The use of "electronic surveillance," commonly known as "wiretaps," is
10  comprehensively regulated by Title III of the Omnibus Crime Control and Safe
11  Streets Act of 1968. 18 U.S.C. §§ 2510-2520; PUB. L. NO. 90-351, TIT. III, 82 STAT.
12  197 (June 19, 1968). Title III permits the use of electronic surveillance only "for
13  classes of crimes carefully specified in 18 U.S.C. § 2516." United States v. United
14  States Dist. Court, 407 U.S. 297, 301-02, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972).
15  Permission to conduct electronic surveillance "is subject to prior court order." Id., at
16  302. In turn, § 2518 "sets forth the detailed and particularized application necessary
17  to obtain such an order as well as carefully circumscribed conditions for its use." Id.
18    In drafting the manifold provisions of Title III, Congress was keenly concerned
19  about "protecting the privacy of individual thought and expression." United States v.
20  United States Dist. Court, 407 U.S. at 302. Indeed, "Much of Title III was drawn to
21  meet the constitutional requirements for electronic surveillance enunciated by this
22  Court in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967),
23  and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)."
24  United States v. United States Dist. Court, 407 U.S. at 302.

25    For situations where Congress has vested law enforcement with the power to
26  conduct electronic surveillance, "the procedure to be followed is specified in § 2518."
27  United States v. United States Dist. Court, 407 U.S. at 304. Subsection (1) of § 2518
28  "states in detail the information required in such application." Id., at 304.

4

In defining the requirements of a sufficient application, Congress explicitly commanded that "*each application* for [a wiretap order] . . . shall include . . . the identity of the investigative or law enforcement officer making the application, *and the officer authorizing the application*." 18 U.S.C. § 2518(1)(a) (emphasis added). Identifying the individual in the application was not alone sufficient. Rather, "*[e]ach order* authorizing or approving the interception of any wire, oral, or electronic communication under this chapter *shall specify . . . the identity* of the agency authorized to intercept the communications, and *of the person authorizing the application*." 18 U.S.C. § 2518(4)(d).

The requirement of approval by a high level official of the Justice Department has been a part of Title III since its inception.[2]  When the Supreme Court first addressed the requirement of approval by a high level Justice Department official, it quoted from the Senate Committee Report that explained:

> Section 2516 of the new chapter authorizes the interception of particular wire or oral communication under court order pursuant to the authorization of the appropriate Federal, State, or local prosecuting officer. [¶] Paragraph (1) . . . centralizes in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques. Centralization will avoid the possibility that divergent practices might develop.  Should abuses occur, the lines of responsibility lead to an identifiable person.  This provision in itself should go a long way toward guaranteeing that no abuses will happen.

United States v. Giordano, 416 U.S. 505, 520, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), *quoting* S. REP. NO. 90-1097, at 96-97 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2189, 2192.

---

[2]  As originally enacted, 18 U.S.C. § 2516(1) provided:
> The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize the application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications.

18 U.S.C. § 2516(1) (1968); PUB. L. NO. 90-351, § 802, 82 Stat. 216 (June 19, 1968).

1    The Supreme Court found it "particularly significant" that not only was "the

2    authority to apply for court orders [] narrowly confined but [the committee report]

3    also declares that it is to be limited to those responsive to the political process."

4    Giordano, 416 U.S. at 520.

5    In a companion case decided the same day as Giordano, the Supreme Court

6    further elaborated:

7        There is little question that § 2518(1)(a) and (4)(d) were
         intended to make clear who bore the responsibility for
8        approval of the submission of a particular wiretap
         application.  Thus, the Senate Report accompanying the
9        favorable recommendation of Title III states that §
         2518(1)(a) "requires the identity of the person who makes,
10       and the person who authorized the application, to be set out.
         This fixes responsibility."

11   United States v. Chavez, 416 U.S. 562, 571-72, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974)
12   (citation and brackets omitted), *quoting* S. REP. NO. 90-1097 (1968), *reprinted in*
     1968 U.S.C.C.A.N. 2189.
13

14   Congress deemed it was not alone sufficient that the application identify the

15   authorizing official.  Congress therefore added "Subparagraph (4) [which] sets out in

16   subparagraphs (a) through (e) the requirements that each order authorizing or

17   approving the interception of wire or oral communications must meet."  S. REP. NO.

18   90-1097, at 74, *reprinted in* 1968 U.S.C.C.A.N. 2189.  As the Supreme Court

19   reaffirmed in Chavez, "§ 2518(4)(d) 'requires that the order note the agency

20   authorized to make the interception and the person who authorized the application so

21   that responsibility will be fixed.'"  Chavez, 416 U.S. at 572, *quoting* S. REP. NO. 90-

22   1097, at 74 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2192.

23   In contrast to Giordano (where the order *did* fix responsibility but did so by

24   identifying an official who was not authorized to approve wiretap applications) and

25   Chavez (where the order was found facially sound even though it fixed responsibility

26   in an authorized official who had *not* reviewed and approved the application),[3] the

27

28       [3] The Supreme Court thereupon looked behind the order to determine whether
     evidence obtained thereunder should be suppressed on the ground that the

1   orders at issue here do not fix responsibility in *any* individual at all nor even allude to

2   approval by "publicly responsible official subject to the political process." Giordano,

3   416 U.S. at 520.

4       "The Act requires suppression 'where there is failure to satisfy any of those

5   statutory requirements that directly and substantially implement the congressional

6   intention to limit the use of intercept procedures to those situations clearly calling for

7   the employment of this extraordinary investigative device.' The 'prior, informed

8   judgment' of 'a particular, responsible Department of Justice official' is such a

9   requirement." United States v. Reyna, 218 F.3d 1108, 1111-12 (9th Cir. 2000),

10  *quoting* Giordano, 416 U.S. at 527. "Indeed, the 'provision for pre-application

11  approval was intended to play a central role in the statutory scheme and suppression

12  must follow when it is shown that this statutory requirement has been ignored.'"

13  Reyna, 218 F.3d at 1112, *quoting* Giordano, 416 U.S. at 528.

14      Regardless of whether the order's failure to identify the political appointee who

15  approved the order independently amounts to a violation of the Fourth Amendment,

16  "paragraphs (ii) and (iii) [of § 2518(10)(a)] must be deemed to provide suppression

17  for failure to observe some statutory requirements that would not render interceptions

18  unlawful under paragraph (i)." Giordano, 416 U.S. at 527, *citing* 18 U.S.C.

19  § 2518(10)(a).

20      The complete absence of any finding that wiretap orders 0-304, 00-304(A), 00-

21  304(B), and 03-194 were approved by a specific Justice Department official with

22  authority to approve the application render these orders invalid on their face.

23  Because a suppression motion lies when "the order of authorization or approval under

24  which it was intercepted is insufficient on its face," 18 U.S.C. § 2518(10)(ii), the

25  evidence obtained from, and derived from, these wiretap orders should be suppressed.

26

27  communications had been "unlawfully intercepted." Because an authorized Justice
28  Department official had approved the application, the order was not subject to
    suppression under § 2518(10)(a)(i).

7

**B.**     **The Absence of any Finding that Wiretap Orders 00-119, 00-119(A),**
**00-119(B), 03-336, and 03-354 were Approved by a Specific Politically**
**Responsible Justice Department Official Renders them Invalid on their**
**Face**[4]

Although, unlike the Wiretap orders discussed in Part A, Wiretap orders 00-119, 00-119(A), 00-119(B), 03-336, and 03-354 purport to recite that they had been submitted for approval to the Justice Department, each order identically recites only in oblique manner that the order was issued "pursuant to an application authorized by *an* appropriate official of the Criminal Division, United States Department of Justice, pursuant to the power delegated to that official by special designation of the Attorney General."[5]

Although these orders at least purport to reflect passing attention to Congress' explicit pre-authorization requirement, in fact the orders still utterly fail to "specify . . . *the identity* of . . . *the person* authorizing the application." 18 U.S.C. § 2518(4)(d). "Requiring identification in the court's order [] serves to 'fix responsibility' for the source of preliminary approval," Chavez, 416 U.S. at 575, a function these orders utterly fail to accomplish.

Any suggestion that this is not a basis for suppression is inconsistent with the Supreme Court's and Congress's express directions to the contrary. *Cf.* United States v. Staffeldt, 451 F.3d 578 (9th Cir. 2006) (failure of order to demonstrate proper authorization requires suppression); United States v. Swann, 526 F.2d 147 (9th Cir. 1975) (order approved by "acting" assistant attorney general is "arguably" facially

---

[4]  Orders 00-304, 00-304(A), 00-304(B), and 03-194 are facially invalid for this reason too but, as addressed in Part A, are invalid for the more fundamental failure to establish any Justice Department authorization at all.

[5]  Ex. 1, at 52-53 (00-119, 5/25/00, at 3-4), Bates 537-38; Ex. 2, at 115 (00-119(A), 6/30/00, at 4), Bates 440; Ex. 3, at 181 (00-119(B), 8/4/00, at 4), Bates 421; Ex. 8, at 645-646 (03-336, 11/5/03, at 4-5), Bates 6708-09; Ex. 9, at 730 (03-354, 11/20/03, at 4), Bates 14,976.

8

1  insufficient); *cf. also* S. REP. NO. 99-541, at 28 (1986), *reprinted in* 1986

2  U.S.C.C.A.N. 3555, 3582 (amendment to add "acting" officers "is not meant to imply

3  rejection in any other context of the well-established principle that an acting official

4  ordinarily possesses all the legal powers of the official for whom he is acting, but to

5  clarify the law under this statute").

6  **C.** **To the Extent Authorized by a Justice Department Official, All the**

7  **Wiretap Orders in this Case are Invalid Because They Were Not**

8  **Approved by an Official Who Had Been "Specially Designated" By the**

9  **Attorney General**

10  1.  Factual Background

11  None of the wiretaps at issue in this case was reviewed by the Attorney

12  General, Deputy Attorney General or Associate Attorney General.  Nor were any of

13  the wiretap applications submitted to an Assistant Attorney General.  When submitted

14  to the Justice Department for approval, each was routed to one of the Deputy

15  Assistant Attorneys General for the Criminal Division.

16  Each Deputy Assistant Attorney General who approved a wiretap order did so

17  under the ostensible authority of an internal order issued by the then-Attorney

18  General that provided, in nearly identical terms:

19  . . . I hereby specially designate the Assistant Attorney

20  General in charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal

21  Division, any Deputy Assistant Attorney General of the Criminal division, and any Acting Deputy Assistant

22  Attorney General of the Criminal Division, to exercise the power conferred by section 2516(1) of Title, 18 United

23  States Code, to authorize applications for orders authorizing or approving the interception of wire or oral

24  communications by the Federal Bureau of Investigation or a Federal agency having responsibility for the investigation of

25  the offense(s) as to which such application is made, when such interception may provide evidence of any of the

26  offenses specified in section 2516 of title 18, United States Code.

27  / / /

28  / / /

9

Order No. [    ] of [date], is hereby revoked effective at
midnight of the day following the date of this order.

*E.g.* Ex. 1, at 13-14, Bates 533-534.[6]

Each of these orders was a long-term, open-ended designation in perpetuity,
each of which remained in effect until revoked by a replacement order with identical
terms several years later, typically following the confirmation of a new Attorney
General.

> 2.    The Wiretap Orders that Were Not Approved by an Lower-Level Official
>        Who Had been Specially Designated Violated Title III and Are Invalid

When first enacted, § 2516(1) vested authority exclusively in the Attorney
General and, when "specially designated," an Assistant Attorney General.  18 U.S.C.
§ 2516 (1969).  Echoing Congress's emphasis on responsibility being fixed in "a
publicly responsible official subject to the political process," Giordano, 416 U.S. at
520, *quoting* S. REP. NO. 90-1097, at 96-97 (1968), *reprinted in* 1968 U.S.C.C.A.N.
2189, 2192, the Supreme Court observed that "The Attorney General is appointed by
the President, by and with the advice and consent of the Senate, 28 U.S.C. § 503, as
are the nine Assistant Attorneys General provided for in 28 U.S.C. § 506."  Giordano,
416 U.S. at 520 n.9.

The Court emphasized the critical importance of Congress's goal in specifically
limiting the individuals authorized to permit wiretap applications:

> it is apparent that Congress desired to centralize and limit
> this authority where it was feasible to do so, a desire easily
> implemented in the federal establishment by confining the
> authority to approve wiretap applications to the Attorney
> General or a designated Assistant Attorney General.  To us,

---

[6] *See also* Ex. 2, at 66-67, Bates 433-434; Ex. 3, at 128-129, Bates 366-367;
Ex. 4, at 194-195, Bates 750-751; Ex. 6, at 343, Bates 6603; Ex. 8, at 534-545, Bates
6725-6726; Ex. 9, at 662-663, Bates 14906; Ex. 10, at 752, Bates 15; Ex. 11 at 894,
Bates 175; Ex. 12, at 1006, Bates 291; Ex. 13, at 110, Bates 803; Ex. 14, at 1228,
Bates 933; Ex. 15 at 1359, Bates 1068; Ex. 16, at 1495, Bates US295; Ex. 18, at
1726, Bates US938; Ex. 19, at 1848, Bates US1059; Ex. 20, at 1995, Bates US1205;
Ex. 21, at 2123, Bates US1332.

1                       it appears wholly at odds with the scheme and history of the
                     Act to construe § 2516(1) to permit the Attorney General to
2                        delegate his authority at will.

3   Giordano, 416 U.S. at 523.

4         In 1984, 10 years after Giordano, Congress expanded the list of political

5   appointees who are generally empowered to authorize wiretap applications to include

6   "[t]he Attorney General, Deputy Attorney General, [and the] Associate Attorney

7   General." Notably, the Deputy Attorney General and Associate Attorney General in

8   whom Congress also vested general authority for approving wiretaps, PUB. L. NO.

9   98-473, § 1203(c)(4),  98 Stat. 2152 (Oct. 12, 1984), are also appointed by the

10  President subject to the advice and consent of the Senate, 28 U.S.C. §§ 504, 504a.

11        In explaining this "relatively minor change," Congress reaffirmed Giordano's

12  interpretation of the statutory purpose as "centraliz[ing] in a publicly responsible

13  official subject to the political process the formulation of law enforcement policy." S.

14  REP. NO. 98-225, at 394 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3533.

15  Congress explained its decision for authorizing a slight expansion to two additional

16  political appointees because "[t]he restriction provided in current law presents serious

17  problems when the statutorily designated individuals – which as a practical matter are

18  or should be limited to the Attorney General or the Assistant Attorney General for the

19  Criminal Division – are not available." S. REP. NO. 98-225, at 394 (1984), *reprinted*

20  *in* 1984 U.S.C.C.A.N. 3182, 3533. Although reaffirming a Congressional preference

21  that wiretap approvals be reviewed by the Attorney General or the Assistant Attorney

22  General for the Criminal Division, the scheduling and availability concerns prompted

23  Congress "to add the Deputy Attorney General and the Associate Attorney General to

24  the specific statutory list of individuals within the Department of Justice authorized to

25  approve applications to the courts for a surveillance order." S. REP. NO. 98-225, at

26  396, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3533. Congress explained that expanding

27  the number of potential authorizing officials permitted "a broader sharing of the

28  burden for reviewing potential surveillance cases, thereby promoting a more thorough

1 consideration without diminishing the congressional intent to have a politically
2 responsible high ranking official personally approve surveillance applications or
3 emergency interceptions." S. REP. NO. 98-225, at 396, *reprinted in* 1984
4 U.S.C.C.A.N. 3182, 3533.[7]

5   For similar reasons of ensuring continuous availability of an authorizing
6 official, Congress has also expanded the list of people who may be "specially
7 designated" from not only "any Assistant Attorney General" but also now "any
8 Assistant Attorney General, any acting Assistant Attorney General, or any Deputy
9 Assistant Attorney General or acting Deputy Assistant Attorney General in the
10 Criminal Division or National Security Division." 18 U.S.C. § 2516(1).[8]

11   In its present incarnation, 18 U.S.C. § 2516(1) specifically identifies the
12 limited class of persons who have the authority to grant permission to seek a wiretap
13 order:

14

15 ────────────────

16 [7] After the 1984 amendment, authority to approve wiretaps was vested in
"[t]he Attorney General, Deputy Attorney General, Associate Attorney General or any
17 Assistant Attorney General specially designated by the Attorney General." 18 U.S.C.
§ 2516(1) (1985).

18   When it added "acting" Justice Department officials, PUB. L. NO. 99-508, §104,
19 100 Stat. 1855 (Oct. 21, 1986), Congress clarified that "[t]he addition of an acting
Assistant Attorney General is not meant to imply rejection in any other context of the
20 well-established principle that an acting official ordinarily possesses all the legal
powers of the official for whom he is acting, but to clarify the law under this statute."
21 S. REP. NO. 99-541, at 28 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3582.

22   [8] In 1986, Congress expanded the list of officials who may be specially
23 designated to include "any Assistant Attorney General, any acting Assistant Attorney
General, or any Deputy Assistant Attorney General in the Criminal Division." PUB.
24 L. NO. 99-508, § 104, 100 Stat. 1855 (Oct. 21, 1986). ("Under this amendment, the
list of officials who may be specially designated by the Attorney General to authorize
25 applications will include any acting Assistant Attorney General, or any Deputy
Assistant Attorney General in the Criminal Division." S. REP. NO. 99-541, at 28
26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3582. Twenty years later, in 2006, as
part of the USA PATRIOT Improvement and Reauthorization Act, Congress added
27 the Deputy Assistant Attorney General of the National Security Division to the list of
officials who could be specially designated. PUB. L. NO. 109-177, § 506(a)(6), 120
28 Stat. 248 (2006).

1

2

3

4

> The Attorney General, Deputy Attorney General,
> Associate Attorney General, or any Assistant Attorney
> General, any acting Assistant Attorney General, or any
> Deputy Assistant Attorney General or acting Deputy
> Assistant Attorney General in the Criminal Division or
> National Security Division specially designated by the
> Attorney General, may authorize an application.

5   18 U.S.C. § 2516(1).

6   Even in its current incarnation, every office holder with statutorily vested

7   authority to approve a wiretap application – the Attorney General, Deputy Attorney

8   General and Associate Attorney General – is a political appointee subject to the

9   political process, as is any Assistant Attorney General (or Acting Assistant Attorney

10  General) who may be specially designated. Only Deputy Assistant Attorneys General

11  (including, of course, those in the Criminal Division or National Security Division),

12  who have such power only when "specially designated" are career attorneys or not

13  political appointees subject to congressional confirmation.

14  As explained above, "Congress intended not only to limit resort to wiretapping

15  to certain crimes and situations where probable cause is present *but also to condition*

16  *the use of intercept procedures upon the judgment of a senior official in the*

17  *Department of Justice that the situation is one of those warranting their use.*"

18  Giordano, 416 U.S. at 527 (emphasis added). The expansion of the officials who

19  could be specially designated was not enacted to vitiate this requirement but to ensure

20  that the government was not deprived of access to this law enforcement tool merely

21  because of individual unavailability or scheduling conflicts or a transition between

22  different administrations or different Attorneys General.

23  The designation orders at issue in this case can be usefully contrasted to those

24  of an earlier time when the Justice Department took seriously its responsibility to

25  have wiretap applications reviewed by a senior official unless impracticable. In

26  United States v. Florea, 541 U.S. 568 (6th Cir. 1976), for example, the court was

27  confronted with a designation order where "Attorney General Richard Kleindienst

28  specially designated Assistant Attorney General Henry Peterson to authorize

13

1    applications for interception orders from November 12, 1972, through November 26,
2    1972." Florea, 541 F.2d at 574. The order specifically provided that "the Assistant
3    Attorney General in charge of the Criminal Division is specially designated to
4    exercise the authority conferred by Section 2516 of Title 18, United States Code,"
5    and "The authority delegated herein to the Assistant Attorney General in charge of
6    the Criminal Division shall be exercised by him only during my absence in Europe
7    from November 12, 1972, to November 26, 1972, inclusive, and shall expire at the
8    end of the latter day." Florea, 541 F.2d at 574 n.7.

9        In this case, by contrast, the Attorney General's designations were not targeted
10   to a specific individual, a specific office holder, a specific time period, for a specific
11   purpose, or during any special conditions. There was nothing "special" about them.
12   Each designation amounted to a "general designation" and wholesale delegation of
13   the Attorney General's, Deputy Attorney General's, and Associate Attorney General's
14   statutorily-invested obligation to ensure not only that "mature judgment of a
15   particular responsible Department of Justice official is interposed as a critical
16   precondition to any judicial order," Giordano, 416 U.S. at 515-16, but that the scope
17   of authorizing officials should not only "be limited to those responsive to the political
18   process," id., at 520, but "as a practical matter are or should be limited to the Attorney
19   General or the Assistant Attorney General for the Criminal Division." S. REP. NO.
20   98-225, at 394, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3533. In short, by routinely
21   delegating wiretap approval to nonpolitical appointees and career officials, these
22   unlimited and unconditional "general" designations fundamentally undermine
23   "congressional intent to have a politically responsible high official personally
24   approve surveillance applications or emergency interceptions." S. REP. NO. 98-225,
25   at 396, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3533.

26       The Supreme Court recognized that "Congress intended to require suppression
27   where there is failure to satisfy any of those statutory requirements that directly and
28   substantially implement the congressional intention to limit the use of intercept

1    procedures to those situations clearly calling for the employment of this extraordinary

2    investigative device." <u>Giordano</u>, 416 U.S. at 527.  Wholesale general delegation of

3    authority to an individual who is not politically accountable thwarts congressional

4    intention and fails to qualify as the type of "special designation" that Congress

5    intended to require.

6        Any suggestion that Deputy Assistant Attorneys General should be the officials

7    routinely assigned to review wiretap applications when Congress specifically

8    provided that they should do so only when "specifically designated" undermines the

9    essential congressional purpose:

10        Narrow construction of the wiretapping provisions furthers
Congress' dual purposes for the Act of "(1) protecting the

11        privacy of wire and oral communications, and (2)
delineating on a uniform basis the circumstances and

12        conditions under which the interception of wire and oral
communications may be authorized." <u>Gelbard v. United</u>

13        <u>States</u>, 408 U.S. 41, 48, 92 S.Ct. 2357, 33 L.Ed.2d 179
(1972), *quoting* S. REP. NO. 90-1097, at 66 (1968),

14        *reprinted in* 1968 U.S.C.C.A.N. 2122, 2153.

15    <u>United States v. Gonzalez, Inc.</u>, 412 F.3d 1102, 1109-10 (9th Cir. 2005).

16        The Supreme Court has emphasized "the sensitivity of the problem involved"

17    because "each surveillance may involve interception of hundreds of different

18    conversations."  <u>United States v. United States Dist. Court</u>, 407 U.S. at 313 n.14.

19    Recognizing "the extraordinary care Congress exercised in drafting . . . the Act," <u>id.</u>,

20    at 306, the Supreme Court has concluded that "the provision for pre-application

21    approval was intended to play a central role in the statutory scheme . . .

22    [S]uppression must follow when it is shown that this statutory requirement has been

23    ignored." <u>Giordano</u>, 416 U.S. at 528.

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

1    The failure of pre-application approval by a generally-empowered official or an

2  official acting pursuant to an appropriate "special designation," is not only a facial

3  defect, but also a factor that renders the communications seized thereunder

4  "unlawfully intercepted."  18 U.S.C. § 2518(10)(a).[9]

5

6                                    **IV.**

7                                **CONCLUSION**

8    For the foregoing reasons, the motion should be granted.

9

10

11  DATED: July 30, 2010                    Respectfully submitted,

12                                          BENSINGER, RITT, TAI & THVEDT
                                            A Limited Liability Law Partnership
13

14                                          S/ KERRY R. BENSINGER

15                                          _____
                                            KERRY R. BENSINGER
16                                          Attorney for Defendant
                                            ALEXANDER SANCHEZ

17

18

19

20

21

22

23  _____

24    [9]    The words 'unlawfully intercepted' are themselves not
           limited to constitutional violations, and we think Congress
25         intended to require suppression where there is failure to
           satisfy any of those statutory requirements that directly and
26         substantially implement the congressional intention to limit
           the use of intercept procedures to those situations clearly
27         calling for the employment of this extraordinary
           investigative device.
28  Giordano, 416 U.S. at 527.

16