1 | Kerry R. Bensinger, State Bar No. 132178
BENSINGER, RITT, TAI & THVEDT
2 | A Limited Liability Partnership
65 North Raymond Avenue, Suite 320
3 | Pasadena, California 91103
Tel:    (626) 685-2550
4 | Fax:   (626) 685-2562

5 | Attorney for Defendant ALEXANDER SANCHEZ

6

7

8 | # UNITED STATES DISTRICT COURT

9 | # CENTRAL DISTRICT OF CALIFORNIA

10

11 | UNITED STATES OF AMERICA,          )    **Case No. CR-09 00466-R-22**

12 |                                    )    **DEFENDANTS' REPLY BRIEF**
                                     )    **PERTAINING TO STANDING IN**
Plaintiff,              )    **SUPPORT OF DEFENDANTS'**
13 |                                    )    **MOTIONS TO SUPPRESS;**
                                     )    **EXHIBITS**
14 | v.                                 )

JOSE ALFARO, et al.,               )
15 |                                    )
                                     )    Hearing Date:    September 16, 2010
16 |         Defendants.               )    Time:            10:00 a.m.
                                     )    Courtroom:       Judge Manuel L. Real
17 | _____ )

18

19

20

21 |         Defendant Alexander Sanchez, by and through his counsel of record, Kerry R.

22 | Bensinger, hereby submits the Defendants' Supplemental Reply to the government's

23 | Consolidated Opposition to Wiretap Suppression Motions wherein the government

24 | raised issue regarding the Defendants' standing to object to the evidence seized as a

25 | result of the wiretap orders.

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

## THE DEFENDANTS HAVE STANDING TO OBJECT TO EVIDENCE OBTAINED FROM THE IMPROPER WIRETAPS

**A.    The Record Provided with the Moving Papers Sufficiently Establishes the Defendants' Standing**

The defendants have established standing because they were either targets identified in the wiretap applications and orders or were intercepted on the wiretaps. Congress extended standing to suppress improper intercepts to anyone who qualified as an "aggrieved person," 18 U.S.C. § 2518(10)(a),[1] and § 2510(11) in turn defines an "aggrieved person" as including anyone "[1] who was a party to any intercepted wire, oral, or electronic communication or [2] a person against whom the interception was directed." 18 U.S.C. § 2510(11).

**1.    Explicitly Named Targets**

Several of the defendants – including Jose Alfaro, Ramon Cendeja, Carlos Cuentas, Yanira Escalante, Juan Fuentes, Paul Cortez Jovel, Pedro Lopez, Juan Mancilla, Josue Martinez, Kelvin Melgar, Fernando Morales and Alex Sanchez – were explicitly identified as targets by the government in their wiretap applications and by the court in the wiretap orders.

These defendants' standing is established by judicially noticeable documents – the government's own applications and the Court Orders thereon. Moreover, their standing as targets is not based on information that is peculiar to their personal knowledge. Instead, it is based on the government's identification of them as target

---

[1] "Any aggrieved person . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom." 18 U.S.C. § 2518(10)(a).

1   subjects. Their standing is statutorily recognized. *See* 18 U.S.C. § 2518(10)(a),

2   § 2510(11).

3        This case is wholly unlike *United States v. Wardlow*, 951 F.2d 1115 (9th Cir.

4   1991), so heavily relied on by the government. Unlike this case, *Wardlow* involved a

5   traditional search, not a wiretap. The circuit court upheld the district court's refusal

6   to consider the "broad declaration" submitted by counsel because it was not signed

7   by "an individual competent to testify concerning the facts." *Id.*, at 1116. This is

8   plausible in the context of a traditional search where the individual defendant was

9   likely present and would likely be in a position to authenticate the circumstances and

10  manner in which his privacy was invaded.

11       The situation is entirely different in the context of a wiretap. Here, the

12  numerous wiretap applications were filed under seal and remained under seal until

13  after the conclusion of the wiretaps. In contrast with a traditional search, the

14  defendants had no basis for knowing they were subjected to a wiretap other than as a

15  result of the documents and materials produced by the government herein.

16             An arrest, a search, or a confession can easily be recreated
               by minimal investigation. That is not the case with the
17             events relevant to wire-interception suppression. First,
               events that are crucial to the suppression decision, as we
18             have discussed, may cover years and may involve
               numerous investigators, attorneys and lay witnesses.
19             Second, a strong policy of secrecy normally surrounds such
               events . . . Third, and perhaps most telling, a defendant is
20             normally present in the typical case when his Fourth
               Amendment rights are invaded. He is, after all, the victim
21             of the invasion. His body is searched, his home or car is
               invaded, or his personal possessions are otherwise wrongly
22             taken. He is thus a witness and can advise counsel about
               the particulars of the wrongful invasion; at least he can
23             point counsel in the proper investigative direction. [¶]
               Wiretapping provides defense counsel no such
24             investigative handholds.

25  Roger E. Zuckerman & James L. Lyons, Strategy and Tactics in the Prosecution and
    Defense of Complex Wire-Interception Cases, Commission Study for National
26  Commission for the Review of Federal and State Laws Relating to Wiretapping and
    Electronic Surveillance 51 (1976).

27

28

1    Similarly, the government's reliance upon the Court's Local Rules to argue

2 lack of standing is misplaced. Contrary to the government's interpretation, the

3 Local Rule does not require a declaration "of" the defendant. Rather, the Local

4 Rules only require the submission of "a declaration *on behalf of* the defendant." *See*

5 Local R. 12-1.1. Here, the facts necessary to establish standing as a target are not

6 personally known to an individual defendant in any unique way that distinguishes

7 their knowledge from the ability of counsel to authenticate the wiretap applications

8 and orders and establish the defendants' standing thereby. Moreover, the

9 government's interpretation of the local rule – which it claims requires a declaration

10 from the defendant instead of "on behalf of" the defendant – is inappropriate in the

11 present wiretap context.

12    Certain applications of this rule, however, would be unfair.
    The most obvious cases where rigid application of the rule

13    would yield unduly harsh results are those instances where
    defendants could not be expected to declare to the

14    contested facts. These instances include motions
    challenging the conduct of officers where defendants were

15    not present or could not be expected to know the key facts,
    and motions challenging civilian witness identifications. In

16    such circumstances, defense counsel will find it virtually
    impossible to obtain voluntary sworn statements from the

17    officers involved, or from witnesses whose names they do
    not know (because the names have been redacted by the

18    government).

19 *United States v. Diaz*, No. CR 05-00167 WHA, 2006 WL 2990219, at *1 (N.D. Cal.
    Sept. 28, 2006).

20

21    In circumstances such as these, the declaration submitted by counsel along

22 with the moving papers (the Bensinger Declaration) is sufficient to establish the

23 standing of the targeted defendants.

24    **2.    The Intercepted Individuals**

25    Given the breadth and volume of the wiretaps and the conditions under which

26 the defendants held in custody can review such calls, requiring individual

27 declarations from the defendants as opposed to counsel on behalf of the defendants is

28 unnecessary and overreaching. During the course of the 21 separate wiretaps in

4

1   place over the eight year period between May 2000 and May 2008, the government

2   intercepted and recorded over 25,000 phone calls. The recorded interceptions last

3   more than 1,000 hours.[2]

4       Because of logistical complications imposed by the United States Marshals

5   and the local jail facilities in which most of the defendants are being detained pretrial

6   – complications that are already established in the record before this Court – most of

7   the defendants have not had a substantial opportunity to listen to a significant

8   number of intercepted calls, let alone all the intercepted calls. In circumstances such

9   as these, the declaration submitted "on behalf of" the defendants by counsel, as done

10  in the moving papers, is sufficient.

11

12  **B.   Additional Individual Declarations**

13      Nonetheless, in an abundance of caution and to put this issue to rest,

14  defendants Kevin Melgar, Paul Cortez Jovel, Alex Sanchez, Pedro Lopez, Yanira

15  Escalante, Guillermo Vasquez-Landaver, Carlos Cuentas, Hugo Bolanos and Jose

16  Alfaro have submitted  individual declarations, signed personally or on his behalf by

17  his counsel. *See* Declarations attached hereto as Exhibit A. As a result, there should

18  be no doubt these declarations are sufficient to establish the defendants' standing.[3]

19

20      [2] Indeed, it took a team that began with four paralegals working a combined total of
21  40 hours per week up to as many as eight paralegals, working as long as seven hours a day
    each, from February 2010 to August 2010, doing nothing but listening to and creating bare
22  bones summary sheets of the calls for the defense team.

23      [3] The government also criticized the submission of the Bensinger declaration with
    the moving papers as not being adequate to provide standing because counsel would not be
24  available for cross examination. Given the individual defendants' declarations submitted
    herewith the government's standing arguments are moot. Nonetheless, the government's
25  contention places form over substance as the government did not contest any of the factual
    statement in counsel's declaration which related primarily to the discovery provided by the
26  government. Once again to negate the government's concerns, the defense herein submits a
    declaration by Jennifer Hansen, a paralegal who has assisted in this case, who reviewed the
27  wiretap discovery, the wiretap applications and wiretap orders. She is in a position to
    authenticate the discovery received by the defense as well as what is missing therefrom,
28  and can be available for cross-examination. Ms. Hansen's Declaration is attached as
    Exhibit B hereto.

5

C.    **By Targeting All the Defendants in the Wiretaps as Persons as Yet Then "Unknown or Unidentified" and Now Alleging That the Defendants Are the Persons it Was Targeting, All the Defendants Have Standing**

Instead of being strictly limited to the narrow scope of the Fourth Amendment, standing to challenge a wiretap is statutorily established to extend to every "person against whom the interception was directed." 18 U.S.C. § 2510(11). When Title III was enacted in 1969, Congress explained that the broad standing conveyed by the statute was "intended to reflect *existing* law." S. REP. NO. 90-1097, at 63 (1968), 1968 U.S.C.C.A.N. 2112, 2180 (emphasis added). To elaborate on what it meant by "existing law," the Senate Report cited *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) and *United States ex rel. De Forte v. Mancusi*, 379 F.2d 897 (2d Cir. 1967), *cert. granted*, 390 U.S. 903, 88 S.Ct. 816, 19 L.Ed.2d 869 (1968), *aff'd* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). Congress's citation to *Jones* and *DeForte* confirm that all the defendants qualify as "aggrieved persons" under § 2510 who have standing to challenge the wiretap orders.

As later explained in *United States v. Salvucci*,  448 U.S. 83, 88, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), *Jones* endorsed a rule of "automatic standing" "to prevent the 'vice of prosecutorial self-contradiction.'" *Salvucci*, 448 U.S. at 88, *quoting Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973). In the context of a traditional search, *Jones* affirmed that, when the government sought to prosecute a defendant for possession of a particular item of evidence, the government could not contest that the defendant had a sufficient possessory interest enabling him to seek to suppress that evidence.

The Second Circuit's *DeForte* case, also endorsed by Congress as an example of the scope of standing it intended to convey under § 2510(11), reinforces the breadth of the statutory standing provision. There, the Second Circuit – later affirmed by the Supreme Court – concluded that a union official who was the government's actual person of interest in the investigation had standing to seek to

6

1  suppress evidence seized from the union offices where the official worked.  In the

2  opinion that was endorsed by Congress as a proper application of § 2510(11)'s

3  standing provision, the court explained that "[although] the search and seizure were

4  conducted against Local 266, we would be blind to reality if we did not recognize

5  that the action by the state officials was actually 'directed' at DeForte."  *DeForte*,

6  379 F.2d at 902.  After reciting the many factors that confirmed that the individual

7  union official, and not the union, were the actual focus of the government's

8  investigation, the court opined that, "[i]n these circumstances we would be myopic

9  not to recognize that appellant was "'a victim of a search or seizure, one against

10  whom the search was directed.'"  *DeForte*, 379 F.2d at 902-03, *quoting Jones*, 362

11  U.S. at 261.[4]

12      Read in light of *Jones* and *DeForte*, Congress clearly anticipated that

13  § 2510(11) and § 2518(10) would be read to authorize suppression motions by

14  persons in the position of the defendants in this case.  In each of the wiretaps, the

15  government defined the target subjects – the "person[s] against whom the

16  interception was directed," 18 U.S.C. § 2510(11) – as including not only those

17  persons the government specifically identified, but also "others as yet unknown,"

18  "others known, unknown, or as yet unidentified," or a similar expansive description.[5]

19

20      [4] Contrary to the government's contention, *Alderman v. United States*, 394 U.S.
165, 89 S.Ct. 961, 22 L. Ed. 2d 176 (1969), did not hold that Title III's definition of an

21  "aggrieved person" was constrained by Fourth Amendment standing principles.  On the
contrary, when confronted with a constitutional question that arose *prior to enactment of*

22  *the statute*, the court simply held that "*for constitutional purposes*, we are not now inclined
to expand the existing rule."  *Id.*, at 175-76.  Expressly "mindful that there is now a

23  comprehensive statute making unauthorized electronic surveillance a serious crime," the
Court acknowledged that, "[o]f course, Congress or state legislatures may extend the

24  exclusionary rule and provide that illegally seized evidence is inadmissible against anyone
for any purpose."  *Alderman*, 394 U.S. at 175.  While opining that Title III did not render

25  illegally seized evidence "inadmissible against anyone for any purpose," the Court affirmed
that Congress did command that the term "aggrieved person" "should be construed in

26  accordance with *existent* standing rules."  *Alderman*, 394 U.S. at 175 n.9 (emphasis added),
*citing* S. REP. NO. 90-1097, at 91, 106.

27

28      [5] Ex. 1, at 48 (Bates 536); Ex. 2 at 113 (Bates 438), Ex. 3, at 179 (Bates 419); Ex. 4,
at 248 (Bates 755); Ex. 5, at 326 (Bates 688); Ex. 6, at 404-05 (Bates 552-53); Ex. 7, at 524
(Bates 6583); Ex. 8, at 643 (Bates 6706); Ex. 9, at 729 (Bates 14,975); "others known,

1   Not only were the Target Subjects explicitly stated to include persons "as yet

2   unknown," but all of the wiretap orders authorized seizing agents to listen not only to

3   calls of the Target Subjects (already defined as including "others as yet unknown")

4   but also to "intercept the record wire communications of the Target Subjects *and*

5   *others as yet unknown*" (or some such similarly expansive description).[6]

6        The government should not be allowed to argue that the defendants who it

7   targeted as members "unknown or unidentified" of a suspected conspiracy, and who

8   it now alleges in the indictment are among the previously "unknown and

9   unidentified" persons it targeted by the wiretaps lack standing while simultaneously

10  arguing that conversations captured on those same wiretaps are now admissible

11  against each of the defendants pursuant to the co-conspirator exception to the

12  hearsay rule under Fed.R.Evid. 800(d)(2)(E)[7] because they are members of the

13  conspiracy that it claimed at the time of the wiretap were "unknown or unidentified."

14  *Jones* would plainly forbid such "prosecutorial self-contradiction."  Similarly,

15  Sections 2510(11) and 2518(10) should be understood to forbid such contradictory

16  positions.  Congress expressly embraced *Jones* – which forbade the government

17

18

19  ――――――――――――

unknown or unidentified," Ex. 10, at 850 (Bates 004); Ex. 11, at 979 (Bates 130); Ex. 12,
20  at 1072 (Bates 263); Ex. 13, at 1200 (Bates 772); "others known, unknown or as yet
unidentified," Ex. 14, at 1329 (Bates 903); Ex. 15, at 1469 (Bates 1038); "others as yet
21  unknown or unidentified," Ex. 16, at 1570; "others yet unknown," Ex. 17, at 1698; Ex. 18,
at 1824; Ex. 19, at 1970, Ex. 20, at 2099, Ex. 21, at 2235.

22

       [6]  Ex. 1, at 50 (Bates 538); Ex. 2, at 115 (Bates 440); Ex. 3, at 181 (Bates 421);
23  Ex. 8, at 646 (Bates 6709); directive to intercept "communications of the Target Subjects,
and others known, unknown, or unidentified," Ex. 10, at 852-53 (Bates 006-07); Ex. 11, at
24  982 (Bates 133); Ex. 12, at 1075 (Bates 266); Ex. 13, at 1203 (Bates 775), Ex. 14, at 1332
(Bates 906); Ex. 15, at 1471 (Bates 1041); directive "to intercept particular wire
25  communications . . . of the Named Interceptees and others as yet known, unknown and
unidentified," Ex. 16, at 1572; directive to intercept communications "of the Named
26  Interceptees and others yet unknown," Ex. 17, at 1701; Ex. 18, at 1827; Ex. 19, at 1973;
Ex. 20, at 2102, Ex. 21, at 2238.

27

       [7]  Significantly, the government proposed to introduce excerpts of conversations
28  captured on the wiretaps not only of conversations by the named defendants, but
conversations of third parties with other third parties who are not parties to this case.

1  from taking inconsistent positions between a suppression motion and a trial – as

2  stating the proper scope of who should be allowed standing to suppress a wiretap.

3  Indeed, the defendants, accused by the government of being members of the

4  conspiracy were, by definition, "person[s] against whom the interception was

5  directed," 18 U.S.C. § 2510(11), and are therefore entitled to standing to challenge

6  the admissibility of the wiretap evidence.  Because each of the defendants, whether

7  or not actually intercepted, was a person the government now alleges was one of the

8  persons whom the wiretap sought to intercept, each of the defendants qualifies as "a

9  person against whom the interception was directed," 18 U.S.C. § 2510(11), and

10  therefore has standing to seek to suppress each of the wiretaps.

11

12  **II.**

13  **DEFENDANTS HAVE STANDING TO SUPPRESS A SUBSEQUENT**

14  **WIRETAP THAT IS DERIVED FROM AN EARLIER WIRETAP**

15  "Where a particular wiretap otherwise valid constitutes the 'fruits of an illegal

16  wiretap,' a particular defendant who could claim no flaws in the tap of his own

17  telephone may have standing to question the validity of other taps." *United States v.*

18  *Baker*, 589 F.2d 1008, 1012 n.6 (9th Cir. 1979).

19

20  **III.**

21  **ALL DEFENDANTS HAVE STANDING TO CONTEST THE**

22  **IMPROPER SEALING OF INTERCEPTIONS**

23  Finally, standing to challenge the failure to properly seal intercepted

24  recordings is not limited by § 2510, let alone by Fourth Amendment principles.

25  "Section 2518(8)(a) has an explicit *exclusionary* remedy for noncompliance with the

26  sealing requirement," *United States v. Ojeda Rios*, 495 U.S. 257, 260, 110 S.Ct.

27

28

9

1  1845, 109 L.Ed.2d 224 (1990) (footnote omitted),[8] that the Supreme Court explained

2  was separate from the "general suppression remedy . . . when electronic

3  communications have been unlawfully intercepted, were intercepted pursuant to a

4  court order that is facially invalid, or were not intercepted in conformity with the

5  order of authorization." *Ojeda Rios*, 495 U.S. at 260 n.1. "Any litigant has

6  'standing' to challenge the reliability of evidence to be presented against him or her

7  at trial." *United States v. Ricco*, 421 F. Supp. 401, 405 (S.D.N.Y. 1976). The defect

8  goes to the very integrity and admissibility of the recordings independent of whose

9  conversations may have been targeted or intercepted. "Thus, upon timely objection

10  wiretap evidence which has been improperly sealed must be excluded from the trial

11  of *any person* just as an improperly certified document would be excluded, i.e., held

12  inadmissible." *Id.*, at 406 (emphasis original).

13

14  DATED: September 7, 2010                    Respectfully submitted,

15                                              BENSINGER, RITT, TAI & THVEDT
                                                A Limited Liability Law Partnership

16

17

18                                              KERRY R. BENSINGER
                                                Attorney for Defendant
19                                              ALEXANDER SANCHEZ

20

21

22

23

24

25

26

27     [8] Congress very clearly provided that "The presence of the seal provided for by this
     subsection, or a satisfactory explanation for the absence thereof, *shall be a prerequisite for*
28   *the use* or disclosure of the contents of any wire, oral, or electronic communication *or*
     *evidence derived therefrom.*"  18 U.S.C. § 2518(8)(a) (emphasis added).

**EXHIBIT A**

1  Stephen G. Frye (CSBN 196728)
   Law Office of Stephen G. Frye
2  316 West Second Street
   Suite 1202
3  Los Angeles, CA 90012
   Phone:  213-621-1600
4  Fax:   213-621-1644
   Email: sgf@sgfryelaw.com
5
   Counsel For Defendant,
6  KELVIN MELGAR

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )   **Case No. CR 09-466-R-16**
                                     )
12                                   )   **DECLARATION OF KELVIN MELGAR**
              Plaintiff,             )   **FILED IN SUPPORT OF HIS MOTION**
13                                   )   **TO SUPPRESS WIRETAP EVIDENCE**
                                     )
14       v.                          )
                                     )   Date:       September 16, 2010
15  JOSE ALFARO, et al.,             )   Time:       10:00 a.m.
                                     )   Courtroom: Hon. Manuel L. Real
16          Defendants.              )
                                     )
17  _____ )

18

19

20

21

22

23

24

25

26

27

28

                              1

1  **DECLARATION OF KELVIN MELGAR**

2    I, Kelvin Melgar, state and declare as follows:

3    1.  I am a defendant in the within action.  I am making this

4 declaration under the compulsion of Local Rule 12-1.1 and based on

5 the understanding that *Simmons v. United States*, 390 U.S. 377

6 (1968), holds that nothing I say in this declaration will be used

7 against me or admitted into evidence in the Government's case-in-

8 chief at trial.

9    2.  According to discovery produced by the prosecution,

10 government agents identified me as a person whose telephone

11 conversations they wanted to intercept and record, and government

12 agents did seek to and were granted permission to intercept and

13 capture telephone conversations I had with other persons.

14 Similarly, based on my review of the discovery, which includes

15 audio recordings and transcripts of recorded conversations, I

16 believe I was a party to one or more telephone conversations that

17 were intercepted during the course of wiretap orders.

18 Collectively, these wiretap orders include:  Nos. 06-104, 06-118,

19 06-194, 06-285, 06-285(A), and 06-285(B).

20    I declare under penalty of perjury under the laws of the

21 United States of America that the foregoing is true and correct to

22 the best of my knowledge.

23    Executed this $3\text{rD}$ day of September, 2010, at

24 SAN BERNADNO, California.

25

26                          Kelvin Melgar

27

28

2

1  MICHAEL J. TREMAN
   Attorney at Law, Bar # 63039
2  30 N. Santa Ynez, # B
   P.O. Box 4727
3  Santa Barbara, CA 93101-4727
   Telephone: (805) 962-6544
4  Fax: (805) 963-3754
   e-mail:m.treman@att.net
5
   Attorney for: Defendant,
6  PAUL CORTEZ JOVEL

7              IN THE

8      UNITED STATES DISTRICT COURT

9   FOR THE CENTRAL DISTRICT OF CALIFORNIA

10
    UNITED STATES OF AMERICA,        )  No. CR 09-00466-R
11                                    )
           Plaintiff,                 )  DECLARATION OF PAUL CORTEZ
12                                    )  JOVEL RE MOTIONS
           vs.                        )  CONCERNING WIRE
13                                    )  INTERCEPTED CONVERSATIONS
    JOSE ALFARO, et al                )
14                                    )
           Defendants.                )
15  _____))

16       I, Paul Cortez Jovel declare:

17       I am the defendant in this case.  I am making this declaration under the

18  authority of *Simmons v. United States*, 390 U.S. 377 (1968), and pursuant to Local

19  Rule 12-1.1.  It is my understanding that nothing I say in this declaration or the fact

20  of its existence can or will be used against me or admitted into evidence in the

21  government's case-in-chief at trial. This declaration is made exclusively in support

22  of the accompanying motions to relating to the wire intercepted conversation.

23       The government has provided in the discovery in this case copies of

24  applications for the interception of wire intercepted conversations, copies of the

25  audio of wire intercepted conversations and drafts of transcripts of the wire

26  intercepted conversation.

27       I have reviewed some of the aforementioned discovery items, including the

28

                          Page 1

1   applications for the interception of wire intercepted conversations. I have listened
2   to some of the audio recordings of the wire intercepted conversations. I have
3   reviewed some of the transcripts of the audio recordings of the wire intercepted
4   conversations.
5        Based upon my review of the foregoing discovery I have determined the
6   following:
7        A) I am listed as a "Target" in the following wire intercept applications:
8   1. Application number 06-285; dated 11/29/2006.
9   2. Application number 06-285(A); dated 12/29/2006.
10  3. Application number 06-285(B); dated 1/26/2007.

11       I declare under penalty of perjury that the foregoing is true and correct.
12  Executed this 1st day of September, 2010 at Los Angeles, California.
13
14
15                    *Paul Cortez, Jovel* /s/
                      PAUL CORTEZ JOVEL
16
17
18
19
20
21
22
23
24
25
26
27
28

1   Kerry R. Bensinger, State Bar No. 132178
BENSINGER, RITT, TAI & THVEDT
2   A Limited Liability Partnership
65 North Raymond Avenue, Suite 320
3   Pasadena, California 91103
Tel:   (626) 685-2550
4   Fax:   (626) 685-2562

5   Attorney for Defendant ALEX SANCHEZ

6

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,     )    **Case No. CR-09 00466-R-22**
                              )
12                               )    **DECLARATION OF ALEX SANCHEZ**
           Plaintiff,          )    **FILED IN SUPPORT OF HIS MOTION**
13                               )    **TO SUPPRESS WIRETAP EVIDENCE**
            v.                  )
14                               )
   JOSE ALFARO, et al.,           )    Date:        September 16, 2010
15                               )    Time:        10:00 a.m.
                              )    Courtroom:   Judge Manuel L. Real
16            Defendants.       )
17   _____ )

18

19

20

21

22

23

24

25

26

27

28

                                    1

1

## **DECLARATION OF ALEX SANCHEZ**

2

3        I, Alex Sanchez, state and declare as follows:

4

5        1.        I am a defendant in the within action. I am making this declaration under the

6    compulsion of Local Rule 12-1.1 and based on the understanding that *Simmons v. United*

7    *States*, 390 U.S. 377 (1968), holds that nothing I say in this declaration will be used against

8    me or admitted into evidence in the Government's case-in-chief at trial.

9

10        2.        According to discovery produced by the prosecution, government agents

11    identified me as a person whose telephone conversations they wanted to intercept and record

12    and that government agents did seek to and were granted permission to intercept and capture

13    telephone conversations I had with other persons.  Similarly, based on my review of the

14    discovery, that includes audio recordings and transcripts of recorded conversations, I believe

15    I was a party to one or more telephone conversations that were intercepted during the course

16    of wiretap orders.  Collectively, these wiretap orders include: Nos. 00-119, 00-119(A), 00-

17    119(B), 00-304, 00-304(A), 00-304(B), 03-194, 03-336, 03-354, 06-104, 08-wt-001

18    (1/18/08), 08-wt-001(2/7/08), 08-wt-001(3/7/08), 08-wt-12 (3/12/08), 08-wt-001(4/4/08),

19    08-wt-12(5/10/08).

20

21        I declare under penalty of perjury under the laws of the United States of America that

22    the foregoing is true and correct to the best of my knowledge.

23

24        Executed this ___2___ day of September, 2010, at _Pasadena_, California.

25

26                                        Alex Sanchez

27

28

2

## DECLARATION OF JAMES P. COOPER III

I, JAMES P. COOPER III, declare and say as follows:

1.     I am an attorney at law duly licensed to practice before all of the courts in the State of California, the Federal District Court for the Central District of California, and the Ninth Circuit Court of Appeals. I was appointed to represent Mr. Jose Alfaro in this proceeding.

2.     I make this declaration on behalf of my client, Jose Alfaro, in support of the collective motions brought on behalf of all the defendants to suppress evidence collected through the government's wiretap interceptions.

3.     According to discovery produced by the prosecution, government agents identified Mr. Alfaro as a person whose telephone conversations they wanted to intercept and record and that, in wiretap Order Nos. 03-194, 03-336, 06-285 and 06-285(A), government agents did seek to and were granted permission to intercept and capture telephone conversations Mr. Alfaro had with other persons. Pursuant to 18 U.S.C. section 2510(11), "'aggrieved person' means ... a person against whom the interception was directed."

4.     Moreover, based on my review of the discovery, that includes audio recordings and transcripts of recorded conversations, I believe that Mr. Alfaro may have been a party to one or more telephone conversations that were intercepted during the course of wiretap Order No. 03-354. Statements Mr. Alfaro made over the telephone conversations appear to have been intercepted and recorded by government agents. Pursuant to 18 U.S.C. section 2510(11), "'aggrieved person' means a person who was a party to any intercepted wire, oral, or electronic communication."

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 1st day of September, 2010, at Los Angeles, California.

_____ /s/ _____
JAMES P. COOPER III

<u>*DECLARATION OF DEFENDANT PEDRO LOPEZ*</u>

I, Pedro Lopez, am a defendant in *United States v. Jose Alfaro*, 09-00466-R.  I am making this declaration under the compulsion of Local Rule 9.2.1 and based on the understanding that *Simmons v. United States*, 390 U.S. 377 (1968), holds nothing I say in this declaration will be used against me or admitted into evidence in the Government's case-in-chief at trial.

According to discovery, government agents identified me as a person whose telephone conversations they wanted to intercept and record.  For example, in wiretap Orders No. 06-285 and subsequent orders, government agents did seek to and were granted permission to intercept and capture telephone conversations I had with other persons.  Specifically, based on a review of the discovery, I am identified by government agents in no fewer than 13 phone conversations recorded pursuant to wiretap intercepts during the months of November and December 2006.  Statements I made over the telephone conversations appear to have been recorded by government agents.

I declare these facts to be true under penalty of perjury.

Signed:      Pedro Lopez

Dated:       September 1, 2010

# DECLARATION OF YANIRA ESCALANTE

I, YANIRA ESCALANTE, declare:

1. I am a defendant in <u>United States v. Alfaro, et. al.</u>, CR 09-466-R pending before this Court. This declaration is submitted for the sole purpose of supporting the defendants' wiretap suppression motions, as addressed in the Government's Consolidated Opposition To Wiretap Suppression Motions (Doc. No. 725). This declaration is made with the understanding that nothing stated in the declaration may be used against me or admitted into evidence in the government's case-in-chief pursuant to the holding in <u>Simmons v. United States</u>, 390 U.S. 377 (1968). This declaration is also filed in compliance with Local Rule 12-1.1 and relies on all facts presented in the defendants' wiretap suppression motions and supporting exhibits and facts to be presented in future filings made by defendants and/or introduced at a court hearing.

2. Under 18 U.S.C. § 2510(11) an "aggrieved person" is defined as: "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."

3. According to discovery produced by the government, including wiretap applications and orders, audio recordings and transcripts of recorded conversations, I believe I was a party to one or more telephone conversations intercepted and recorded, and/or a person whose telephone conversations government agents sought and received permission to intercept and record, based on, but not limited to, the following wiretap orders: 03-194, 03-336, 03-354, 06-285, 06-285A, 06-285B, 08wt001-JLK, and 08wt0012-JLK.

4. Therefore, I believe I am an "aggrieved person" and have standing to move to suppress evidence derived from the wiretap orders entered in this case.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed this __1__ day of September, 2010, at _Los Angeles_, California.


YANIRA ESCALANTE

1

1  I, _Estela    Moll_____, am fluent in written and spoken English and

2  Spanish languages. I accurately translated the above declaration from English into Spanish

3  to defendant, Yanira Escalante, on this date.

4

5  _____                    9 - 1 - 10
   INTERPRETER                                   DATE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## DECLARATION OF GUILLERMO VASQUEZ-LANDAVER

I, Guillermo Vasquez-Landaver, hereby state and declare the following:

1. I am a defendant in *United States of America v. Jose Alfaro, et. al.*, CR 09-466-R. I am submitting this declaration in support of the motion to suppress wiretap evidence that was filed on my behalf. Although I want to fully exercise my Fifth Amendment privilege against self incrimination, I am compelled to submit this declaration by Local Criminal Rule 12-1.1. I understand that, pursuant to the United States Supreme Court's decision in *Simmons v. United States*, 390 U.S. 377 (1968), my statements in this declaration cannot be used as evidence against me in the Government's case-in-chief at trial.

2. I have reviewed wiretap applications, audio recordings of intercepted telephone calls and transcripts of these recordings which the government provided in discovery. I was a party to at least one telephone call that the government intercepted in or about June 2003 pursuant to wiretap order number 03-194. I was also a party to at least one telephone call that the government intercepted in or about November 2003 pursuant to wiretap order number 03-354.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 1st day of September 2010, at Santa Ana, California.

GUILLERMO VASQUEZ-LANDAVER

## CERTIFICATION OF INTERPRETER

I, Esther Hermida, am a court-certified Spanish language interepreter. I certify that I translated this declaration from English to Spanish to Guillermo Vasquez-Landaver before he signed it. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 1st day of September 2010, at Santa Ana, California.

ESTHER HERMIDA

## DECLARATION OF HUGO BOLAÑOS

Hugo Bolaños deposes and says:

1. I am a defendant in the within action. I am making this declaration under the compulsion of the Local Rules and based on the understanding that *Simmons v. United States*, 390 U.S. 377 (1968), holds nothing I say in this declaration will be used against me or admitted into evidence in the Government's case-in-chief at trial.

2. Based on my review of the discovery, that includes audio recordings and transcripts of recorded conversations, I believe that I was a party to one or more telephone conversations that were intercepted during the course of wiretap Order No. 03-354. One of the voices on one of the conversations is my voice. Statements I made over the telephone conversations were intercepted and recorded by government agents. In addition, I believe my voice was also intercepted on a recording identified at "08wt12-1."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 2nd day of September, 2010, at Los Angeles, California.

_____
HUGO BOLAÑOS

**EXHIBIT B**

Kerry R. Bensinger, State Bar No. 132178
BENSINGER, RITT, TAI & THVEDT
A Limited Liability Partnership
65 North Raymond Avenue, Suite 320
Pasadena, California 91103
Tel:   (626) 685-2550
Fax:   (626) 685-2562

Attorney for Defendant ALEXANDER SANCHEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-09 00466-R-22 |
| Plaintiff, | **DECLARATION OF JENNIFER HANSEN IN SUPPORT OF DEFENDANTS' MOTIONS TO SUPPRESS EVIDENCE SEIZED FROM ILLEGALLY OBTAINED WIRETAPS** |
| v. | |
| JOSE ALFARO, et al., | |
| Defendants. | Hearing Date:    September 16, 2010 |
| | Time:               10:00 a.m. |
| | Courtroom:       Judge Manuel L. Real |

1

1    I, JENNIFER HANSEN, hereby declare as follows:

2

3    1.    I am an attorney and member of the Bar of the State of California.  I
4    have been appointed under the CJA to provide paralegal support to the defense in
5    *United States v. Alfaro*, Case No. CR 09-0466-R (C.D. Cal.), in connection with
6    evaluating the sufficiency of the wiretap applications and orders.

7    2.    I make this declaration in support of the defendants' motions to suppress
8    evidence derived from wiretaps.  The facts stated in this declaration which are not
9    otherwise based on the papers, pleadings, and records filed in this case, or the
10   discovery produced by the prosecution in this case, are true of my own personal
11   knowledge or I am informed and believe them to be true and, if called as a witness, I
12   could and would competently testify thereto.

13   3.    In the course of my work on this case, I have reviewed the applications
14   for wiretaps, the affidavits submitted in support of those applications, the wiretap
15   orders, indices describing the discovery produced by the government and much of
16   the underlying discovery itself.

17   4.    In the course of reviewing the discovery, I was unable to find any
18   memorandum from the Department of Justice specifically authorizing permission to
19   apply for the wiretaps 00-304, 00-304(A), 00-304(B), or 03-194.

20   5.    Based on my review of the discovery produced to the defense, as well as
21   my discussions with other attorneys, paralegals, and support staff working on this
22   case, the defense has not received:

23        • any materials (that we can identify) that would corroborate the
24   allegations of Agent Lucero that the FBI had obtained the services, even temporarily,
25   of any members of the Fulton clique of MS at any time between 1994 and 1996;

26        • any materials that would corroborate the allegations of Agent Lucero
27   that Walter Lacinos-Santos, a.k.a. Camarón, continued to make telephone calls while
28   in federal custody to defendant Ruben Pineda between 1997 and May 1998;

2

1           • any evidence that law enforcement captured the content of telephone

2  calls of Camarón or corroboration that they took any investigative steps as a result of

3  information learned from those calls prior to applying for a wiretap in May 2000.

4           • any materials that would tend to corroborate Agent Lucero's allegation

5  that the government attempted to recruit an informer in March 1998.

6           • any materials that would tend to corroborate Agent Lucero's

7  allegations that any surveillance was conducted, or event attempted to be conducted,

8  on Ruben Pineda on March 15 or 30, 2000, June 14, 15, 16, or 27, 2000, or July 7

9  or 24, 2000, or that any law enforcement agency attempted to follow up on any

10  information received during any such purported surveillance;

11          • any of the underlying applications or orders that would tend to

12  corroborate the wiretap affiants' allegations that any law enforcement agency applied

13  for or received authorization to install a pen register or trap and trace device on any

14  telephone in connection with the investigation in this case;

15          • any materials corroborating many of the allegations regarding the

16  course and scope of the investigation described in affidavits in support of the

17  May 25, June 30, or August 4, 2000 wiretaps (00-119, 00-119(A), and 00-119(B))

18  or affidavits in support of the November 20, 2000, January 2 or February 1, 2001

19  wiretaps (00-304, 00-304(A), or 00-304(B)); the June 10, November 5 and

20  November 21, 2003 wiretaps (03-194, 03-336, 03-354); the April 26, May 17,

21  July 19, November 29, 2006 and January 26, 2007 wiretaps (06-104, 06-118, 06-194,

22  06-285, 06-285(A), 06-285(B)); and the January 8, February 7, March 7, March 12,

23  April 4, and May 10, 2008 wiretaps (08wt001-1, 08wt001-2, 08wt001-3, 08wt12-1,

24  08wt001-4, 08wt12-2).

25          • any documents, including 302 reports (that we can identify), that

26  would tend to corroborate the allegations of Agent Worth that the government

27  received information from an informer in 2000 who was purportedly a shot caller of

28  the Coronado clique of MS.

3

6.   I have reviewed a copy of the transcript of the testimony of Jorge Pineda, a.k.a. Dopey, when he testified in the Los Angeles Superior Court on August 28, 2008. The statements attributed to the transcript of Dopey's testimony (cited as "R.T. JP" in the defendants' joint motion) are either accurate quotations therefrom or are a fair characterization of Jorge Pineda's testimony.

7.   I have reviewed the Defendants' Notice of Motion and Motion to Suppress Evidence Derived from Unnecessary Wiretap Obtained on False Pretenses, filed on July 30, 2010. Certain pages of material produced by the prosecution was identified by a unique Bates number, particular to each page. I assisted in providing and inserting citations to the discovery that supported the factual allegations of the aforementioned motion to suppress. The factual allegations contained in that motion that cite to Bates numbered documents are fairly supported by information reflected in the Bates numbered page of the discovery that correlates to the page cited in the motion.

8.   Based on my review of the discovery, the following people were named in of the government's wiretap applications as targets: Jose Alfaro, Ramon Cendejas, Carlos Cuentas, Yanira Escalante, Juan Fuentes, Paul Cortez Jovel, Pedro Lopez, Juan Mancilla, Kelvin Melgar, Fernando Morales, Alex Sanchez and "Negro."

9.   In addition to the foregoing explicitly named individuals, in each wiretap application, the government sought to, and each order granted the government permission to, intercept the conversations of "others as yet unknown" who, the government alleged, were co-conspirators or otherwise associated with or participated in the activities of the named targets.

/ / /

/ / /

/ / /

/ / /

4

10. Over the course of the eight years that wiretaps were employed in this case, the government captured and recorded over 25,000 telephone calls. The amount of recording time of these calls is approximately 1,000 hours.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge.

Executed this ⁷ᵗʰ day of September, 2010, at Pasadena, California.

JENNIFER HANSEN

5